## STATE v. LONNEY OAKLEY.

(Filed 11 December, 1918.)

1. **Criminal Law—Involuntary Manslaughter—Negligence—Evidence—Contributory Negligence.**

   Contributory negligence is not a defense to a charge of involuntary manslaughter, and may only be considered in its relevancy to the question of the defendant's negligence, which must be in a greater degree than that required to sustain a civil action for damages. *S. v. Tankersly,* 172 N. C., 959, cited and applied.

2. **Criminal Law—Evidence—Nonsuit—Trials.**

   While the evidence upon a trial for involuntary manslaughter must be considered in the light most favorable to the State, upon defendant's

motion as of nonsuit; it does not require the inference of the worse intent of which the evidence is possibly capable.

### 3. Same—Automobiles—Speed Limits.

Upon a trial for involuntary manslaughter, the evidence for both the State and the defendant tended to show that the defendant was traveling along a country road, driving an automobile at a lawful speed, and ran upon and killed the deceased while endeavoring to pass the forward machine, which had stopped at the home of the deceased; that the deceased was a lad, and, becoming confused, stepped from the space between the two machines, where he could have safely remained; that the deceased and his competent driver knew that the defendant was following them, and with this knowledge the deceased alighted in this dangerous position; that the prisoner knew the deceased was in the forward machine, driven by a careful and competent man, and also where he lived: *Held*, this evidence was insufficient to be submitted to the jury, and defendant's motion as of nonsuit thereon should have been sustained.

APPEAL by defendant from *Cline, J.*, at August Term, 1918, of WILKES.

The defendant was convicted of involuntary manslaughter, and from the judgment upon such conviction appealed to this Court.

The facts, as stated in the brief of the State, are as follows:

Russell Mink, a young boy, about 11 years old, was killed on 30 May, 1918, under the following circumstances: He was riding in a car of W. E. Colvard, sitting on the front seat, to the right of Colvard, who was driving. Following Colvard's car was that of defendant Oakley, both cars running about 25 miles an hour along a highway in Wilkes County. Oakley knew the boy, knew his father, and knew the boy was in the car, and knew where they lived. When approaching Mink's house, which was on the left of the road, Colvard gave a signal (and this was so understood by the defendant) that he was going to stop at Mink's house, began to "slow up" and direct his car to the left of the road. His car did stop in front of Mink's, on the left side of the road. There is evidence that defendant knew that the boy was sitting on the front seat, to Colvard's right, and that the steering wheel was on the left. The defendant admitted that when the car would go around curves he could easily see him, and when the car stopped "I had an idea that it had stopped to let the Mink boy get out at his home." The boy did get out at the right, and into the road, and, seeing defendant's car coming, lost his head, attempted to run across the road in front of it, was knocked down and dragged by it about 20 feet, when, one of its hind wheels going across his head, he was killed. If he had stopped short upon getting out, he would have avoided any danger, as the interval between the cars would have been from 3 to 7½ feet. The defendant was in a hurry to get to Wilkesboro, and, at the time he was passing the Colvard car, was

going at the rate of 18 or 20 miles an hour, while the witness, Colvard, testified that he was going at the rate of 25 miles an hour.

At the conclusion of the evidence the defendant moved for judgment of nonsuit, which was overruled, and he excepted.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*T. C. Bowie for defendant.*

ALLEN, J. The conduct of the deceased, if amounting to contributory negligence, is no defense to the charge of involuntary manslaughter. *Schultze v. State,* Ann. Cases, 1912, C. 501; 2 R. C. L., 1213. It is, however, material and relevant to the extent that it bears on the question of the negligence of the defendant. *S. v. Campbell,* 18 Ann. Cases, 236.

But negligence alone, which might be sufficient to sustain a civil action, will not justify a conviction for manslaughter.

The question was carefully considered in *S. v. Tankersley,* 172 N. C., 959, and the following principle announced: "All of the authorities are agreed that in order to hold one a criminal, there must be a higher degree of negligence than is required to establish negligent default on a mere civil issue, and that in order to a conviction of involuntary manslaughter, attributable to a negligent omission of duty, when engaged in a lawful act, it must be shown that a homicide was not improbable under all the facts existent at the time and which should reasonably have an influence and effect on the conduct of the person charged. . . . A negligence which will render unintentional homicide criminal is such carelessness or recklessness as is incompatible with a proper regard for human life. An act of omission as well as commission may be so criminal as to render death resulting therefrom manslaughter. But the omission must be one likely to cause death."

These are our guides in determining whether there is evidence of the guilt of the defendant, which ought to have been submitted to the jury; and while the evidence must be considered in the light most favorable to the State, this being a motion for judgment of nonsuit, "It is neither charity nor common sense nor law to infer the worst intent which the facts will admit of." *S. v. Maney,* 86 N. C., 660.

The fact which stands out prominently and about which there is no debate is that the defendant was not exceeding the speed limit prescribed by statute, and he was not therefore engaged in an unlawful act. He was driving along a country highway with no one in sight except the occupants of the car in front. He knew the forward car was going to stop, and thought it was for the purpose of letting Russell Mink get out

at his home, but he also had notice that the occupants of the forward car knew he was running behind, because they had signalled him.

Colvard, the driver of the front car, was a man of mature years, as the defendant knew, and he says Russell told him of the car behind. When Colvard stopped at the Mink home he left no room to pass on his left and the defendant turned to the right, still running at a lawful rate of speed, and as he passed the little boy got out of the Colvard car and ran in front of the defendant's car and was killed.

Colvard, the principal witness for the State, testified, among other things: "My car was still when he stepped out and there was plenty of room for him to have stood by my car and let the other car pass. Apparently when he saw he was going to be hit he run in front of the car. Almost immediately when he stepped out of the car the other car struck him. The boy stepped out so quickly the other fellow had not had time to see him before it happened."

We fail to see in this any evidence of recklessness on the part of the defendant, or any facts or circumstances which could reasonably lead him to believe that his passing the forward car would probably cause death or serious bodily injury.

Knowing that Colvard was a full-grown man, and that he and Russell knew the car of the defendant was behind and running, the defendant might reasonably expect, instead of injury or death, that the boy would stay in the car until he passed, or if he tried to get out that Colvard would not let him do so, or if he got out he would remain in a place of safety and would not run in front of a moving car.

In our opinion the motion for judgment of nonsuit ought to have been granted.

Reversed.