## STATE v. CLEOPHUS GRAY and WILLIAM BALLENTINE.

### (Filed 4 November, 1920.)

**1. Criminal Law— Automobiles — Negligence — Evidence — Homicide — Statutes.**

Evidence tending to show that one of the defendant's was instructing the other how to drive an auto truck, with the hands of both on the steering wheel, on a street much used by pedestrians in a populous part of the city, and while running at a speed exceeding the speed law and without looking ahead or warning, they ran upon, injured, and killed a child three years of age, endeavoring to cross the street, which a slight deflection of the machine from its course could have saved, is sufficient to sustain a verdict of manslaughter, irrespective of whether the death of the child was willfully or intentionally caused. Public Laws of 1917, ch. 140, secs. 15 and 17.

**2. Same—Prior Negligence.**

Where one driving an automobile in a reckless manner and in violation of the requirements of the statutes as to speed and care intended to prevent injury (Public Laws of 1917, ch. 140, secs. 15 and 17) runs upon and kills a three-year-old child crossing a street in a populous portion of a city, he is guilty of manslaughter at least, and under some circumstances, murder, though as soon as he has seen the danger of the pedestrian he has used every effort to avoid injuring him, if his prior recklessness had rendered him unable to control the car and prevent the injury.

**3. Same.**

While the negligence of one driving an automobile causing death must be of greater degree in the criminal action than is required in a civil one, it is sufficient if it was likely under the circumstances to produce the death, or great bodily harm, as in this case, where the defendant, driving in a reckless manner, in violation of the statute, could reasonably have anticipated the result that actually followed.

**4. Same—Contributory Negligence.**

The doctrine of contributory negligence has no application in the criminal law, and constitutes no defense for one who has recklessly and in violation of our statute enacted for the purpose of protecting pedestrians, etc., caused injury or death. *S. v. Oakley,* 176 N. C., 755, as to whether evidence of this character may be considered upon the question of negligence, cited and distinguished.

**5. Criminal Law—Automobiles—Negligence—Children—Infirm Persons.**

The vigilance and care required of the operator of an automobile vary in respect to persons of different ages and physical conditions who are to be met upon the streets, and he is required to increase his exertions and use more care to avoid danger to children whom he may see, or, by the exercise of reasonable care, should see, on or near the highway.

**6. Same—Contributory Negligence.**

The law will not impute contributory negligence to a child of three years of age, who has been injured by the negligence of one driving an auto truck.

7. **Appeal and Error—Harmless Error—Evidence—Negligence—Automobiles.**

The statement of a witness that, in his opinion, the defendant tried for criminal negligence while driving an automobile, which has caused injury, on the street, to a pedestrian endeavoring to cross it, was unskillful in handling the automobile, if erroneously admitted, is harmless, when it appears from all the evidence in the case that this was indisputably the fact. *Semble*, the testimony of the witness in this case was competent as "a shorthand statement of a fact."

8. **Appeal and Error—Witnesses—Experts—Courts—Findings.**

The findings of fact by the trial judge, upon evidence, as to whether a witness is an expert or not, is not reviewable on appeal.

9. **Evidence—Witnesses—Experts—Speed of Automobiles—Negligence.**

Witnesses qualified as experts therein may testify, when relevant to the inquiry, as to the distance within which an auto truck of the kind causing the injury in the action can stop when going at a given speed an hour.

APPEAL by defendants in a criminal action from *Daniels, J.,* at June Term, 1920, of WAKE.

The defendants were convicted of involuntary manslaughter at June Term, 1920, of Wake County Superior Court, Hon. F. A. Daniels, judge presiding, and from this judgment, upon such conviction, appeal to this Court.

The State's evidence, fairly considered, tended to show the facts as herein narrated. Rachel Mann, a little girl three years of age, was, on an afternoon of March, 1920, visiting at the house of her uncle, M. L. Mann, who lived directly across South Salisbury Street from the house of J. H. Mann. Between 5:30 and 6 p. m., Mrs. M. L. Mann went with the little girl out in front of her house so that she might go home. After looking up and down Salisbury Street, and seeing no automobile or vehicle coming from either direction, Mrs. Mann permitted the little girl to go, and she started running across the street directly toward her father's house. The M. L. Mann house was the fourth house from the corner of West Cabarrus and Salisbury streets, and the J. H. Mann house was directly across Salisbury Street from the M. L. Mann house. The street was paved with asphalt, and at that point was about 42 feet wide from the curb of the east sidewalk to the curb of the west sidewalk. Salisbury Street runs north and south; Cabarrus runs east and west. After the child had started to run across the street, a new Corbitt truck, driven by the defendants, came out of Cabarrus Street and turned south along Salisbury Street. No signal was given by blowing a horn, or otherwise, by the driver of the truck. It came out of Cabarrus and rounded into Salisbury at a slow speed, and as it straightened out to run along Salisbury the speed increased to 20 miles an hour. The truck struck the child when she was 16 feet and 4 inches from the west curb

and 25 feet and 6 inches from the east curb, knocked her down, and the right fore wheel of the truck ran across her head, crushing it, and killing her instantly. The point where the child was struck was 165 feet from the intersection of Cabarrus and Salisbury streets. No effort was made by the driver of the truck to stop it or to avoid the child. By turning its direction slightly to the east, even when within 10 feet of the child, the truck would have passed her probably without doing her any injury. After thus killing the child, the truck ran 13 feet without any effort being made to lessen its speed, or to stop. At that point brakes were put on, and the truck skidded 33½ feet to the point where it was stopped; thus it ran 46 feet after striking the child. One eye-witness, L. H. Amis, swears that at the time the truck struck the child it was, in his opinion, running 20 miles an hour. And quite a number of witnesses who were experienced in the handling of automobiles and trucks swear that in order for this truck to have skidded 33½ feet after the brakes were put on, it must have been running at a rate of speed exceeding 20 miles an hour. The defendant Gray had charge of the truck, but had permitted Ballentine, known to him to be an inexperienced driver, to drive it at that time, as he (Gray) was sitting by his side.

One witness, William Thames, testified: "I saw the truck come around the corner. There were two men in front. They were both using their hands in the operation of the truck."

Defendants were convicted, and from the judgment they appealed.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*Armistead Jones & Son for defendants.*

WALKER, J., after stating the case: We need not give all the facts disclosed by the evidence, as those we have stated are sufficient to present the real question of the case.

All the witnesses testify that there was nothing to obstruct the view of the driver of the truck in the direction in which they were going. All of them testify that no warning or signal of the coming of the truck was given. The very fact that the driver put on brakes after the child was run over shows conclusively that he was not keeping an adequate lookout as he ran along the thickly populated street. There is obviously no doubt, and cannot be, that the defendants were operating the motor truck at an excessive speed, and were not keeping a lookout for persons in the street. If they had been, the little child could easily have been seen and saved.

It appears to us that, if anything, the undisputed facts of the case make it even stronger against the defendants than were those in *S. v.*

*Gash,* 177 N. C., 595, against him. They were operating the truck at a speed in excess of eighteen miles an hour, contrary to the provisions of the statute, Public Laws of 1917, ch. 140, sec. 17, and *S. v. McIver,* 175 N. C., 761. Though driving along a thickly settled street, they kept no proper look ahead at all to avoid a collision with a child, or children, whom they knew, or should have known, were constantly playing in or crossing the street, or with grown persons who used it for legitimate purposes, and gave no signal of their coming. This was a clear violation of the law, which reads thus: "Upon approaching a pedestrian who is upon the traveled part of any highway, and not upon a sidewalk, . . . every person operating a motor vehicle shall slow down and give a timely signal with its bell, horn, or other device for signaling." Sec. 15 of ch. 140, *supra.* It is very clear that the defendants in this case were keeping no lookout at all. If they had been, the child would not have been killed. As it was, she had passed so far to the right that the right wheel of the truck was the wheel that struck her. Thus it would have required but a slight variation of the direction of the truck to have saved the child. Instead of changing this direction, as a matter of fact, they were bearing down upon the child, and gave her no chance to escape.

The principle is generally stated in the textbooks that "if one person causes the death of another by an act which is in violation of law, it will be manslaughter, although not shown to be willful or intentional" (McClain Cr. L., vol. 1, sec. 347), or that when life has been taken in the perpetration of any wrongful or unlawful act, the slayer will be deemed guilty of one of the grades of culpable homicide, notwithstanding the fact that death was unintentional and collateral to the act done (13 R. C. L., 843); but on closer examination of the authority, it will be seen that the responsibility for a death is sometimes made to depend on whether the unlawful act is *malum in se* or *Malum prohibitum,* a distinction noted and discussed in *S. v. Horton,* 139 N. C., 588. It is, however, practically agreed, without regard to this distinction, that if the act is a violation of a statute intended and designed to prevent injury to the person, and is in itself dangerous, and death ensues, the person violating the statute is guilty of manslaughter at least, and under some circumstances of murder. The principle is recognized in *S. v. Horton, supra,* and in *S. v. Turnage,* 138 N. C., 569; *S. v. Limerick,* 146 N. C., 650, and *S. v. Trollinger,* 162 N. C., 620, and has been directly applied to deaths caused by running automobiles at an unlawful speed. In 2 R. C. L., 1212, the author cites several authorities in support of the text that one who willfully or negligently drives an automobile on a public street at a prohibited rate of speed, or in a manner expressly forbidden by statute, and thereby causes the death of another, may be

guilty of homicide; and this is true, although the person who is recklessly driving the machine uses, as soon as he sees a pedestrian in danger, every effort to avoid injuring him, provided that the operator's prior recklessness was responsible for his inability to control the car and prevent the accident which resulted in the death of the pedestrian. There is evidence, in this case, of negligence amounting to recklessness, and "where one, by his negligence, has cause or contributed to the death of another, he is guilty of manslaughter." McClain Cr. L., vol. 1, sec. 349. The negligence must be something more than is required on the trial of an issue in a civil action, but it is sufficient to be submitted to a jury in a criminal prosecution if it was likely to produce death or great bodily harm (*S. v. Tankersley,* 172 N. C., 955), and in this case the defendant could reasonably anticipate meeting some one at the crossing, and to approach it at a rate of speed twice that allowed by law, without reducing the speed and without signal, is evidence of recklessness which justified submitting the question of guilt to the jury. *S. v. McIver,* 175 N. C., at pp. 765, 766.

It is immaterial that there was negligence on the part of the deceased contributory to the result, the doctrine of contributory negligence having no place in the law of crimes. McClain Cr. L., vol. 1, sec. 349; 2 R. C. L., 1212; *Schultz v. State,* Ann. Cases., 1912, ch. 496, and note.

The vigilance and care required of the operator of an automobile vary in respect to persons of different ages and physical conditions. He must increase his exertions in order to avoid danger to children, whom he may see, or by the exercise of reasonable care should see, on or near the highway. More than ordinary care is required in such cases. *Deputy v. Kimmell,* 80 S. E. (W. Va.), 919; 8 N. & C. Cases, 369. Moving quietly, as an automobile does, without the noise which accompanies the movements of a street car or other ordinary heavy vehicle, it is necessary that caution should be continuously exercised to avoid collision with pedestrians unaware of its approach. The speed should be limited, warnings of approach given, and skill and care in its management so exercised as to anticipate such collisions as the nature of the machine and the locality might suggest as liable to occur in the absence of such precautions. Berry on Automobiles, sec. 124; Huddy on Automobiles (4 ed.), sec. 214. In *S. v. Gash, supra,* the court below charged the jury: "If the defendant was operating the car lawfully, and at the rate of speed permitted by law, yet if by reason of a failure to keep a proper lookout he failed to see the deceased in time to avoid injuring him, and 'by reason of his carelessness and negligence in failing to keep this lookout' he caused the death of the child, he was guilty." The Court held that in this charge there was no error. Very clearly, then, the court below was right in

·overruling the defendants' motion for judgment as of nonsuit. . Exceptions 1 to 3 are so clearly without foundation that we pass them over without further comment.

The witness, L. H. Amis, was testifying, and in the course of his testimony said: "The car seemed to be handled by persons that did not know anything about it." Defendants moved that this be stricken out, ;and the motion was denied. If this was not "a shorthand statement of the fact," and admissible for that reason, *S. v. Leak,* 156 N. C., 643; *S. v. Johnson,* 176 N. C., 722; *S. v. Spencer,* 176 N. C., 709, the car was ·so plainly mishandled that no harm was done by what the witness said. The defendants got the full benefit of the evidence, the subject of exception 5, both from the statement of this witness and other witnesses.

Exceptions 6, 7, 8, 9, and 13 are all directed to the admission of so-·called expert evidence.

Whether a particular witness is an expert or not is a question of fact to be determined by the court below preliminary to the admission of the testimony. That once determined, as it necessarily is determined, if the testimony is admitted, the appellate Court accepts the findings of the ·court below (*Caton v. Toler,* 160 N. C., 104), if there is any evidence to sustain them. *S. v. Wilcox,* 132 N. C., 1120; *Summerlin v. R. R.,* 133 N. C., 550. Admitting, then, that each of the particular witnesses was .an expert in regard to the matter about which he was examined, testimony as to the distance within which such a truck, as Corbitt's truck, ·could be stopped when going at a rate of speed 20 to 25 miles an hour was plainly admissible. *Cox v. R. R.,* 126 N. C., 103; *Draper v. R. R.,* 161 N. C., 307.

Exceptions 15 to 19, inclusive, were directed to the judge's failure to give certain special instructions requested by defendants. All of these have inherently the same vice, *i. e.,* that the carelessness and recklessness ·of the defendants must have been so great as to constitute an actual felonious intent.

"If one person causes the death of another by an act which is a violation of the law, it will be manslaughter, although not shown to be willful ·or intentional." *S. v. McIver, supra.*

"The negligence which will render unintentional homicide criminal is such carelessness or recklessness as is incompatible with a proper regard for human life. An act of omission as well as commission may be so criminal as to render death resulting therefrom manslaughter. But the omission must be one likely to cause death." *S. v. Tankersley,* 172 N. C., 959.

The remaining exceptions, other than those not formal, were directed to alleged errors in the judge's charge. The judge, however, it seems to us, followed the law as laid down by this Court in *S. v. McIver, supra;*

*S. v. Tankersley,* and *S. v. Gash, supra.* He was very careful to distinguish between negligence occasioning damage out of which arises a civil action and that reckless disregard of human life which constitutes a crime, and if there was any error in his charge upon an involuntary killing while doing an unlawful act, that error was in favor of the defendants.

While we hold the defendants to be guilty, as charged in the bill of indictment, upon what must be conceded as the facts of the case, we are yet moved to caution those whose children venture upon the streets and public highways, where so many motor cars pass and repass at short intervals, to bestow more care and vigilance in guarding them against danger. The chauffeur of an automobile may be ever so careful—and every one of humane feelings would deplore an injury to a little child—and yet with all his care, children are apt to get in the way of a car without the slightest warning to him of their movements, so suddenly, in their childish play, do they dart out in the roadway, not conscious of any peril in doing so. Drivers of vehicles should take account of this characteristic of theirs, and exercise greater precaution against accident because of it. This record does not present such a case, for, after the chauffeur either saw or could have seen the child, having a fair and unbroken view, he had ample time to turn the car or to stop it, if necessary, and avoid the catastrophe. The indiscretion of the little one was no excuse for the driver's *reckless* conduct, for that correctly describes it. The law imputes no wrong to a child of such tender years, who was less than three years old, but requires far more care and watchfulness of the driver under the circumstances. We can safely aver that no case has come before this Court where there was such utter disregard of the plain duty which the law imposes upon a chauffeur. He and his companion have taken the innocent life of a little child, under most distressing circumstances, a homicide not less than manslaughter, and palpably of that degree, at least, and they must suffer the penalty of their wrongdoing. The law looks at their act alone, as they are prosecuted for a public and criminal offense, and the act of the little girl, even if indiscreet for one so young, cannot avail them. The law should be enforced with more vigor, locally and generally, against those who drive so recklessly and with such great indifference to the rights of others. The defendants were fortunate when they were convicted of the lower degree of homicide, and received so light a sentence.

The charge of the judge was free from error, and was more, for it was very liberal to the defendants, giving them the benefit of the law, in one or two respects, beyond what they were entitled to have.

The contention of defendants that there is no evidence that their conduct was in violation of the speed law or statute designed to prevent

injury to pedestrians, or others, nor is there any evidence that it was itself dangerous, cannot be sustained.    There is overwhelming testimony to the contrary.

Defendants contend that the conduct of the child, while not of itself a defense, is material to be considered as bearing upon defendants' negligence, for which they cite *S. v. Oakley,* 176 N. C., 755, which holds that "contributory negligence is not a defense to a charge of involuntary manslaughter, and may only be considered in its relevancy to the question of the defendant's negligence, which must be in a greater degree than that required to sustain a civil action for damages," citing *S. v. Tankersley,* 172 N. C., 959, but in *Oakley's case* the defendant had acted in a proper manner, was guilty of no recklessness, but was traveling at a lawful rate of speed and obeying the law, and the fatal accident occurred because the lad, who was killed, had stepped suddenly from a car in front of a house, where it had stopped after being driven in front · of defendant's car for some distance, and the latter was unable, even by the exercise of the highest degree of care, under the circumstances, to save him.   Besides, it appeared that defendant had exercised an unusual degree of care, in approaching the other car.   These cases are widely different in their facts, and *Oakley's case* lacks a great deal of supporting defendants' position here.   The same may be said of *Tankersley's case, supra,* and all this is true, even if we follow strictly what was so well said by *Justice Ashe* in *S. v. Massey,* 86 N. C., 658, 660, that it is neither charity nor in accordance with common sense, nor is it law, to infer the worst intent which the facts will admit of or justify.   In the last named case the Court ruled that where the acts of a person may reasonably be attributed to two or more motives, the one criminal and the other not, the humanity of our law will ascribe it to that which is not criminal.   The guilt of a person is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence.

But this principle does not apply where there is a clear violation of the law, upon self-evident facts, which leads necessarily to the result, and is the efficient cause thereof, as the law does infer the intent to do that which is the almost inevitable consequence of the defendants' acts. By over driving, and thus increasing their speed to twenty miles or more at the time of the impact, they disabled themselves to stop the car, or even to divert its course, at the very time when it was necessary to do so, in order to save the little child from injury./ The other exceptions are more a quarrel with the jury for its verdict than a protest against the rulings of the court.

We have carefully examined the case, and the exceptions taken by defendants, and find no error in the case or record.

No error.