12592

STATE v. SUSSEWELL

(146 S. E., 697)

130

136

*Mr. H. P. Burbage,* for appellant,

*Solicitor J. G. Leatherwood,* attorney for respondent.

February 14, 1929.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The defendant, Wylie Sussewell, was tried at the January, 1928, term of general sessions Court for Greenville County, before his Honor, Judge William H. Grimball, and a jury, under an indictment charging assault and battery with intent to kill, in unlawfully and maliciously striking Miss Emily Asbury with an automobile while he was driving the same in the City of Greenville, May 1, 1927. The trial resulted in a conviction of the defendant of assault and battery of a high and agravated nature, and the defendant was sentenced by the Court to serve from two to four years in the State Penitentiary, or a like period upon the public works of Greenville County. From the sentence imposed the defendant has appealed to this Court.

In his appeal, the appellant presents a number of exceptions, but, under our view of the case, the exceptions raise but four questions that need be discussed, namely:

(1) Is contributory negligence or willfulness of the person assaulted a complete defense to a criminal prosecution?

(2) Should the presiding Judge have submitted to the jury the question of simple assault and battery?

(3) Did the presiding Judge commit reversible error in refusing to charge defendant's following request to charge, to wit:

"You are to weigh carefully the injured person's conduct at the time of the collision, and if you find that her conduct was the proximate cause of her injuries, then this would exculpate the defendant, and it would be your duty to acquit him."

(4) Did the presiding Judge charge on the facts?

As to the first question, with reference to contributory negligence or willfulness of the assaulted person being a complete defense to a criminal prosecution, the well-settled law is opposed to appellant's position. In the case of *State v. Hanahan*, 111 S. C., 77, 96 S. E., 667, this question was raised, and, in overruling the exception upon which the question was based, Mr. Justice Watts, now Chief Justice, speaking for the Court, in no uncertain language stated that such did not constitute a defense for any criminal offense. See, also, Clark's Criminal Law, 211; 21 Cyc., 766; and 29 C. J., 1155.

In regard to the second question as to whether or not the defendant was entitled to have submitted to the jury the question of simple assault and battery, the defendant was clearly entitled to this right, if there was testimony from which the jury might have drawn a reasonable inference that the defendant was only guilty of that offense, assault and battery, but, if there was not such testimony, then the presiding Judge was right in refusing the request. To dispose of this question, a review of the testimony is necessary.

The injury to the prosecuting witness, Miss Emily Asbury, a teacher in the city schools of Greenville, occurred on one of the most important streets of the city, known as West McBee Avenue, in front of the First Baptist Church, which Richardson Street comes into McBee Avenue; the First Baptist Church fronting on McBee Avenue and facing the point where Richardson Street terminates. The injury occurred about 11 o'clock Sunday morning, May 1, 1927. Miss Asbury was leaving the church building, where she had been to attend Sunday School, intending to go to her home. As she walked down the steps of the church building, she walked "straight out Richardson Street," which street terminates in McBee Avenue, as above stated, and, while in the attempt of crossing, she was run over and knocked down by an automobile driven by the defendant, a colored man, who did not stop the automobile after striking her, and succeeded in evading the officers and making his escape, being captured some time later in Knoxville, Tenn. There is no dispute as to the defendant being the rightful party charged. Miss Asbury did not see the automobile until about the time it struck her. She stated, "I saw it just as it struck me. I turned just as it struck me." There were cars parked on both sides of the streets. As she started across the avenue, going up Richardson Street, a car on her left stopped, and the gentleman driving that car waved her to go by. She started on, glanced on both sides, and started on. In answer to questions of defendant's counsel on this point, she stated, "I did glance both sides and went on, my eyes straight up."

"Q. And the first time you saw Sussewell's car was when it was right up against you? A. Very, very close. I heard the grinding of the brakes and turned my head to see what it was and it struck me.  *  *  *

"Q. Now, Miss Emily, you heard this negro putting on his brakes, and that's what attracted your attention, and he was right up on you at that time? A. Yes.

"Q. Now, the negro was driving about how fast? A. I am no judge of speed like that. It was very fast. * * *

"Q. You are no judge of the rate. He did come to a standstill? A. No.

"Q. Were you knocked unconscious? A. Not at all.

"Q. And in your opinion he did not come to a standstill? A. I know he didn't.

"Q. And, although you are no judge of speed, you are unable to say how fast he was going? A. I can't say of my own knowledge how fast he was going.

"Q. He was driving a Ford, I believe? A. So I was told.

"Q. You know a Ford when you see it? A. I had an underneath view. I have never had a view from that point before.

"Q. Now, Miss Emily, when you were knocked down was the car directly over you? * * * A. It threw me up. As I fell, it passed over me.

"Q. So the only injuries you received was the lick of the car? A. I think not.

"Q. You were conscious, you state? A. Yes.

"Q. Nothing was done to you more than being struck, thrown and the car passed over you? A. Caught me and carried it with me (carried me with it).

"Q. How far? A. I think almost to River Street, where River Street comes in.

"Q. How many feet would you say that is? A. Some, I think probably 25 feet, something like that.

"Q. What disentangled you from the car? A. The breaking of the cord that held my cloak, the car dragged me around with it and when it broke I was thrown and the car passed."

In answer to questions by the Solicitor on re-direct examination, Miss Asbury further testified:

"Q. You say the car did not stop at all? A. No, did not stop.

"Q. You started to tell Mr. Burbage when the car struck you you say you were caught by some part of the frame of the automobile and dragged along for some distance? A. Yes, sir.

"Q. And you were under the car? A. It struck me, he threw me up and threw me under the engine and caught my cloak right here on the underneath part of the car and dragged me.

"Q. When you were being dragged, Miss Emily, along there did the car make any effort then to stop? A. Not that I could realize.

"Q. And the way that you got loose from the car was the breaking of the cord to your shawl? A. Yes, sir.

"Q. While you were being dragged you were looking up toward the bottom of the car? A. Looking right at the bottom of the car.

"Q. This car struck, it approached you from the right? A. Yes.

"Q. It was going west on McBee Avenue? A. Yes.

"Q. When you went out from the church did you look to see whether or not the street was clear at the time? A. Yes, sir.

"Q. Was the street clear at the time? A. Yes, sir, it was clear and I hesitated and this gentleman in the car, I did not know who he was, he smiled and motioned to me to go ahead and I went.

"Q. At that time about what point in the street had you reached when this gentleman waved or motioned for you to pass on? A. I had not reached half way.

"Q. But you had gotten out to the street? A. Right beyond the parked cars here and had passed his car but I hardly think I had got to the middle of the street.

"Q. I believe among the injuries that you sustained you also sustained a number of broken bones? A. Broken arm, two broken pelvis bones and wrenched back and wrenched shoulder."

Mrs. J. Wilbur Hicks, a witness for the State, testified that she drove on McBee Avenue just as the car struck Miss Asbury, and she saw the form of Miss Asbury in the air and saw the car pass over her body; that the negro was at that time driving slowly, slow enough for her to speak to him, and she called to him, "Why don't you stop?" "but he did not, but he passed on and gained speed."

W. T. Henderson, a witness for the State, testified that he saw the defendant's car coming, and that it was running fast, at the rate of 35 or 40 miles per hour, and was being driven in the middle of the street. He also stated, in answer to questions by defendant's counsel, that it was necessary to run "pretty much" in the middle of the street, due, no doubt, to the fact that many cars were parked on the sides of the streets and to the congested traffic. The witness stated, "Saw defendant's car coming fast—back end curtains were swinging out—flopping, and I saw he had run into somebody. I didn't know at the time who it was, and instead of my going down there when I saw the car would not stop after it hit the party, he kind of slacked up a little bit and then he put the power on and shot on. Went and reported the case to police department."

Henry Willis, witness for the State, testified that he saw defendant's car after striking Miss Asbury; that the car slowed up after striking her, but did not stop, the witness saying: "He kind of slacked a little."

Dr. C. B. Earle, a witness for the State, testified that he treated Miss Asbury for the injuries received on this occasion; that she received a fractured arm, a double fracture of the pelvic bones, broken on both sides, and was injured in her shoulder; that the injuries were serious, she had to remain in the hospital for eight or ten weeks; that she had not fully recovered, and very likely would always have some pain from the injuries received.

Mr. Sam Walker and Mr. I. A. Cohen, witnesses for the defendant, testified to the good reputation of the defendant.

It was the contention of the defendant, as disclosed by his testimony, that, on the occasion when his car struck Miss Asbury, he was going from the garage up McBee Avenue, and was driving very slowly, eight or ten miles an hour; that he was traveling as near the right side of the street as he could; that cars were parked on either side; that he did not see anybody until Miss Asbury stepped out and the fender of the car struck her; that he did not see anybody when he was along there, and the next thing he knew was when he struck her; that he did not see Miss Asbury until he struck her.

"Q. (By his counsel.) Where did you first see Miss Asbury? A. I didn't see her until I hit her. It seems as that she was looking the other way. * * *

"Q. How far across the street was she when your car struck her? A. She just stepped down into the street, about the middle of the street like."

The defendant further testified that he did all in his power to keep from striking Miss Asbury; that the brakes of the car were in good condition; that he ran off because he was scared.

In our opinion, the jury could not have drawn a reasonable inference from this testimony that the defendant was only guilty of a simple assault and battery, and therefore the presiding Judge properly refused to submit this question to the jury. While the defendant testified that he was not driving over eight or ten miles per hour, and that he did everything in his power to prevent striking Miss Asbury, when the defendant's testimony is considered as a whole, in connection with the physical facts in the case, independent of the evidence introduced by the State, as to how the injury occurred, the contention of the defendant cannot be sustained. The defendant testified that Miss Asbury was about in the middle of the street when he struck her, and that, "I didn't see her until I hit her. It seems as that she was looking the other way." If the defendant knew

Miss Asbury was looking the other way before he struck
her, then he saw her before he struck her. If he had been
running at the rate of only about eight or ten miles per
hour, as he testified, and put on brakes before striking Miss
Asbury, the impact would not have injured her; at least,
she would not have been thrown up in the air and then
dashed underneath the car. The very fact that she was
thrown up in the air and dashed underneath the car shows
conclusively that the car was running at a rapid rate of
speed, at a point in the city that was lined with cars and
where pedestrians were traveling. An automobile may well
be termed a "dangerous instrumentality," and, when handled
in this manner, an absolute disregard for the lives of others
is manifested by the party so handling it. Furthermore,
while the indictment did not charge the defendant with fail-
ing to stop and render assistance after striking Miss Asbury,
the very fact that he did not stop after knowing that he
struck her, and knowing that he was dragging her over
the street underneath his car, shows, not only gross negli-
gence and recklessness, but willfulness as well. According
to our opinion, the jury took a merciful view of the de-
fendant's case in rendering a verdict of assault and battery
of high and aggravated nature, instead of convicting him of
assault and battery with intent to kill, and in no event was
it proper for the presiding Judge to submit to the jury the
question of simple assault and battery.

The third question presented is, Did the presiding Judge
commit reversible error in refusing to charge the defend-
ant's following request to wit: "You are to weigh care-
fully the injured person's conduct at the time of the collision,
and if you find that her conduct was the proximate cause
of her injuries, then this would exculpate the defendant
and it would be your duty to acquit him"?

Assuming the request embodies a correct proposition of
law, a question which we do not consider necessary to de-
cide in this appeal, still the appellant has no ground to com-

plain, for his Honor charged other requests of the defendant which gave the defendant all he was entitled to. The defendant's fourth request, which his Honor charged, was as follows:

"That before a conviction can result in this case, the State must establish beyond a reasonable doubt that the defendant not only failed to use due care but that he was guilty of gross negligence and that his act of gross negligence was the proximate and direct cause of the injury complained of, the assault and battery in this case."

There were other requests also presented by the defendant which his Honor charged, along the same line. Taking the charge as a whole, we are clearly of the opinion that the jury fully understood their duty under the law, and that the charge was fair to the defendant.

The fourth question raised is that the presiding Judge charged on the facts. An examination of the charge convinces us that his Honor's charge was applicable to the facts but not a charge on the facts.

The contention of appellant is not sustained.

We have considered the other questions raised by the exceptions presented, and, while we have not discussed the same, we have given them due consideration, and are of the opinion that the same should be overruled.

The appellant's exceptions are therefore overruled, and it is the judgment of this Court that the judgment of the Circuit Court be, and the same is hereby, affirmed.

MR. CHIEF JUSTICE WATTS concurs.

MESSRS. JUSTICES BLEASE and STABLER concur in result.

MR. JUSTICE COTHRAN (dissenting): The defendant was tried under an indictment charging him with assault and battery with intent to kill and murder, and was convicted of the lesser offense (or grade) of assault and battery of a high and aggravated nature. The sentence was from two to four years' imprisonment in the penitentiary or upon the public works.

The indictment grew out of a collision between the prosecutrix, Miss Asbury, and an automobile driven by the defendant upon a prominent street in the City of Greenville.

The *locus* may be thus described: McBee Avenue runs practically east and west; Richardson Street, north and south, and terminates at McBee Avenue, at right angle with McBee Avenue; the First Baptist Church fronts on McBee Avenue, one block from Main Street, and faces the point of the termination of Richardson Street; it is in a direct line with what would be an extension of Richardson Street if it did not terminate at McBee Avenue; as aptly described by counsel for the appellant, the situation may be compared to the capital letter T, the vertical stem representing Richardson Street, and the horizontal cross-piece McBee Avenue, the church being located opposite the point of junction.

The accident happened on Sunday, May 1, 1927, about 11 a. m., just after Sunday School, which Miss Asbury had attended, had dissolved. At that time automobiles were parked on both sides of McBee Avenue, making it necessary for cars using McBee Avenue, going to and from Main Street, to be driven practically in the center of the avenue. Miss Asbury left the church, descending the high stairway to the pavement, and then proceeded directly to cross McBee Avenue for the purpose of entering Richardson Street to return to her home; she passed between cars which were parked along the south pavement, and which to some extent obscured her vision in the direction of Main Street; she observed a car approaching from her left, going toward Main Street; the driver of that car slowed down and motioned to her to proceed, which she did; *she did not look to her right in the direction of Main Street,* from which the defendant's car was being driven; she did not observe its approach until it was practically upon her; the collision occured; and she was badly hurt. There was evidence tending to show that the defendant was driving in the middle of the street, and at the rate of about 35 miles an hour; he slowed

up his car after the collision, but speeded up and later left the State, being captured in a distant city.

I. Various exceptions raise the point in different phases that the contributory negligence or willfulness of the assaulted party is a complete defense to the criminal prosecution. Such is not the law.

In 29 C. J., 1155, it is said:

"The contributory negligence of the person killed, although it may be a defense to an action for a private injury resulting from homicide does not constitute a defense to a prosecution for homicide." The same rule, in reason, would apply in prosecutions of the present character. *State v. Oakley,* 176 N. C., 755, 97 S. E., 616; *State v. Weisengoff,* 85 W. Va., 271, 101 S. E., 450; *State v. Moore,* 129 Iowa, 514, 106 N. W., 16; *Held v. Com.,* 183 Ky., 209, 208 S. W., 772; *State v. Elliott,* 94 N. J. Law, 76, 110 A., 135; *Lauterbach v. State,* 132 Tenn., 603, 179 S. W., 130; *State v. McIver,* 175 N. C., 761, 94 S. E., 682; *State v. Campbell,* 82 Conn., 671, 74 A., 927, 135 Am. St. Rep., 293, 18 Ann. Cas., 236; *Schultz v. State,* 89 Neb., 34, 130 N. W., 972, 33 L. R. A. (N. S.), 403, Ann. Cas., 1912-C, 495, 21 A. & E. Enc. L., 195; *State v. Gray,* 180 N. C., 697, 104 S. E., 647; 2 R. C. L., 1213.

In *State v. Hanahan,* 111 S. C., 58, 96 S. E., 667, in an opinion by the present Chief Justice, it was said:

"In no event is contributory negligence a defense to an indictment for murder or manslaughter or any criminal offense."

II. The defendant submitted the following request to charge, which was refused:

"You are to weigh carefully the injured person's conduct at time of the collision, and if you find that her conduct was the proximate cause of her injuries, then this would exculpate the defendant and it would be your duty to acquit him."

I think that this request should have been given, and that refusal was reversible error.

It is unquestionably true that the defendant cannot be held guilty of the result of his alleged criminal carelessness, unless it be shown to have been the proximate, or at least a proximate, cause of the result; and, while the contributory negligence of the person injured cannot be considered as a defense to the charge, it may be and should be considered in determining the vital question of the proximate character of the defendant's act.

In 29 C. J., 115, it is said:

"The negligence  *  *  *  must be the proximate cause of the homicide."

In *State v. Oakley,* 176 N. C., 755, 97 S. E., 616, the Court said:

"The conduct of the deceased, [in a case involving injury by collision with an automobile. I interpolate], if amounting to contributory negligence, is no defense to the charge of involuntary manslaughter. [Citing authorities.] *It is, however, material and relevant to the extent that it bears on the question of the negligence of the defendant"*—citing *State v. Campbell,* 82 Conn., 671, 74 A., 927, 135 Am. St. Rep., 293, 18 Ann. Cas., 236.

In the *Campbell case* the Court said:

"The Court properly said to the jury that the State must clearly show that the deceased's death  was the direct result of the defendant's negligence, but that the injured man's conduct became material only as it bore upon the question of such negligence of the accused, and that if the culpable negligence of the accused was the cause of Mr. Morgan's death, the accused was responsible under the criminal law whether Mr. Morgan's failure to use due care contributed to his injury or not."

In 2 R. C. L., 1213, it is said:

"The decedent's behavior is admissible in evidence, and may have a material bearing upon the question of the defendant's guilt, but if the culpable negligence of the latter is

found to be the cause of the death, he is criminally responsible whether the decedent's failure to use due care or not."

III. It would seem that under the case of *State v. Knox,* 98 S. C., 114, 82 S. E., 278 (with the righteousness of the decision in which I personally am not at all enthusiastic), the defendant was entitled to have submitted to the jury the question of simple assault and battery which was specifically excluded by his Honor, the Circuit Judge. See, *State v. Jones,* 133 S. C., 167, 130 S. E., 747.

The defendant was convicted of assault and battery of a high and aggravated nature; that necessarily excluded the finding of malice or recklessness equivalent to malice; logically, the verdict, upon its face, included a finding of gross negligence. Such a verdict has been frequently assimilated to a verdict of manslaughter in a case of homicide, and in the case of *State v. Davis,* 128 S. C., 265; 122 S. E., 770, it was held that a verdict of manslaughter predicated upon simple negligence cannot stand. There was evidence in the case tending to show that the defendant was guilty of nothing more heinous than simple negligence; that he was forced into the middle of the street by the parked cars, was traveling at a moderate rate of speed; and that he did not see Miss Asbury, as she did not see him, in time to avoid the collision. It is true that there was evidence opposing this view, but it is not the province of this Court to determine that issue of fact; the jury may have taken the defendant's side of the issue; we do not know. If they did, and placed the harshest construction upon his conduct, they may have concluded that he was guilty only of simple negligence. The logical result of such conclusion would have been that the defendant was not liable to conviction of a more serious offense than simple assault and battery; but, under the charge specifically excluding the possibility of such a verdict, there was nothing left for them to do but, upon a finding of simple negligence, to convict the defendant of the higher grade of assault and battery of a high and aggravated nature.

I think, therefore, that the judgment should be reversed and a new trial ordered.