WILLIAM LLOYD TRENT, Appellant, v. CLARK COUNTY JUVENILE COURT SERVICES, Respondent.

No. 6761

November 7, 1972                    502 P.2d 385

*Robert G. Legakes,* Public Defender, and *Thomas D. Beatty,* Deputy Public Defender, Clark County, for Appellant.

*Robert List,* Attorney General; *Roy A. Woofter,* District Attorney, and *Charles L. Garner,* Chief Deputy of Appeals, Clark County, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

This is the second time this case has come before us on appeal.[1] William Lloyd Trent has been adjudicated a delinquent child[2] and committed to the juvenile detention facility in Clark County. Trent's adjudication as a delinquent child was predicated on a charge of involuntary manslaughter.[3]

---

[1]See Trent v. Eighth Judicial Dist. Court Juvenile Dep't, 87 Nev. 216, 484 P.2d 1097 (1971), where we remanded the case to the lower court, so that Trent could file his objections to the referee's findings of fact and recommendation, as provided by NRS 62.090 and Supplemental Rule XXVII of the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark.

[2]NRS 201.090, in pertinent part:

"As used in NRS 201.090 to 201.110, inclusive, unless the context otherwise requires, a 'dependent child' or 'delinquent child' means any person less than 18 years of age:

". . .

"14. Who violates any law of this state or any ordinance of any town, city or county of this state defining crime."

[3]The petition charging Trent alleged:

"That the subject minor, WILLIAM LLOYD TRENT, is a minor whose behavior is injurious to his health and welfare; in that, on February 28, 1970, at and within the County of Clark, State of Nevada, the

1. Just after midnight on the night of February 27–28, 1970, Trent and two young male companions were returning in their separate cars from a beer-drinking party to downtown Las Vegas. They were following one another, with Trent taking up the rear. As they proceeded in a westerly direction on East Charleston Boulevard, the three vehicles passed another car traveling in the same direction. The car they passed was driven by Robert Jarrard, who was later a witness for the State. As the three vehicles pulled back into the right-hand lane of traffic after passing Jarrard, the driver of the first car noticed two young people walking with the traffic on the shoulder of the boulevard. He applied his brakes and slowed down to see if the pedestrians were girls. The second driver likewise slowed down, as did Trent. Trent's car, however, had the unhappy characteristic of pulling to the right when its brakes were applied. It did so on this occasion, striking and killing Lonnie Anthony Reo, one of the pedestrians.

Trent was taken into custody, and two blood alcohol tests were taken, one of which indicated a blood alcohol percentage of .115 and the other, a percentage of .107.[4]

Jarrard testified at the juvenile court hearing that he was traveling between 40 and 45 miles per hour when Trent and his two companions passed him.[5] Jarrard estimated the speed of the passing vehicles at between 60 and 70 miles per hour. Trent's companions testified that they were driving at between 40 and 50 miles per hour. Trent could not recall his speed, but denied that he was traveling as fast as 60 to 70 miles per hour.

2. H. Leon Simon, acting as Referee of the Juvenile Department of the Eighth Judicial District Court, found at the conclusion of the juvenile court hearing on May 22, 1970, that

---

subject minor did then and there unlawfully kill LONNIE ANTHONY REO, a human being, without malice or deliberation in the commission of an unlawful act, to-wit: by operating a 1958 4-door Chevrolet Sedan automobile, bearing 1971 Nevada License No. CK1960, towards and against LONNIE ANTHONY REO, a person who was a pedestrian legally walking west on East Charleston Blvd., in the vicinity of Lamb Blvd., Las Vegas, Clark County, Nevada, in a careless, reckless and imprudent manner and in such a manner as to endanger the life, limb and property of persons upon said public road and not having a drivers license so to do."

[4]Today, a blood alcohol percentage of .10 raises a presumption of intoxication. See NRS 484.381. At the time of the accident, however, a reading of .15 was necessary to raise the presumption. A reading of .05 to .15 could be considered, however, with other competent evidence in determining whether a person accused of driving while intoxicated was guilty of a violation. See ch. 675, § 95, subsection 1 [1969] Stats. Nev. 1486.

[5]The posted speed limit for the area was 35 miles per hour.

Trent did kill Reo without intent to do so, but while in the commission of an unlawful act, namely, driving in excess of the lawful speed limit. The referee recommended to the district judge that Trent be adjudged a delinquent child.

After this court remanded the first appeal to the lower court, Trent filed his objections to the referee's findings of fact and recommendation. The district judge, after a hearing on the objections, overruled them and adopted the referee's findings of fact and recommendation that Trent be adjudged a delinquent child. At a later "dispositional hearing," the district judge ordered Trent committed to the Clark County Juvenile Detention Facility.

3. Trent's principal assignment of error is that there is a conflict between NRS 62.090, subsection 4, and Supplemental Rule XXVII, Section 4, of the Eighth Judicial District Court, in that under the statute, according to Trent's interpretation, he is given, upon filing a request within 5 days after the referee filed and served his findings of fact and recommendation, the right to a complete new hearing before the district judge.[6] We do not so interpret the statute. Nor do we find the statute and the rule to be in conflict.[7] The rule actually supplements the statute in carrying out the latter's purpose and

[6]NRS 62.090, subsection 4:

"4. Notice in writing of the master's findings and recommendations, together with the notice of right of appeal as provided herein, shall be given by the master, or someone designated by him[,] to the parent, guardian or custodian, if any, of the child, or to any other person concerned. A hearing by the court shall be allowed upon the filing with the court by such person of a request for such hearing, provided that the request is filed within 5 days after the giving of the notice. In case no hearing by the court is requested, the findings and recommendations of the master, when confirmed or modified by an order of the court, become a decree of the court."

[7]Section 4 of Supplemental Rule XXVII of the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark, dated January 9, 1970, and effective March 9, 1970:

"4. At any time prior to the expiration of 5 days after the service of a written copy of the findings and recommendations of a referee, a minor or his parent or guardian may apply to the juvenile court for a rehearing. Such application may be directed to all or any specified part of the findings or recommendation. The judge of the juvenile court may, after reading the transcript of such proceedings, grant or deny such application. If an application for rehearing is not granted within 20 days following the date of its receipt, it shall be deemed denied. In case no hearing by the court is requested, the findings and recommendation of the referee, when confirmed or modified by an order of the court, become a decree of the court. A judge of the juvenile court may, on his own motion, order a rehearing of any matter heard before a referee."

intent, i.e., to provide a more expeditious manner of hearing and disposing of juvenile court cases. If we were to hold, as Trent argues, that upon request a hearing de novo must be granted, the statute would be meaningless. The referee (or the master, as he is called in the statute) has the duty to conduct the evidentiary juvenile court hearing and thereafter to make his appropriate findings of fact and recommendations to the district judge. If no request or application is made for "a rehearing" within 5 days after the referee or master files and serves his report, then his findings and recommendations, when confirmed or modified by an order of the court, become the decree of the court. If a request or an application for a rehearing is made within the 5-day time limit, the district judge must review the transcript of the proceedings before the referee or master. The district judge may hear oral argument, require briefing (as was done in this case), and thereafter either approve and confirm the findings of fact and recommendations, in whole or in part, or may remand the case to the referee for a further evidentiary hearing. The district judge may, if he wishes, but he is not required to do so, conduct a new hearing in the district court.

In Trent's case, the district judge read the transcript of the juvenile court proceedings and heard oral argument of counsel; the issues were briefed; and thereafter the district judge ruled that the record supported the referee's findings and recommendation, which he approved and confirmed. We, too, have reviewed that record, and we agree with the result reached by the district judge.

4. Trent complains that the referee did not consider the contributory negligence of the decedent in making his decision. The rule has been stated in R. Anderson, Wharton's Criminal Law and Procedure § 986 (1957) as follows:

". . . The fact that the deceased was guilty of negligence directly contributing to his death does not exonerate the accused, unless deceased's negligence was the sole cause of death. In the latter case, the defendant is exculpated not because of the contributory negligence of the victim but because the defendant was not the proximate cause of the homicide. . . ." (Footnotes omitted.)

The contributory negligence of the deceased, if any, could not be deemed the sole cause of death in the circumstances disclosed by this record.

5. Trent finally urges that a charge of manslaughter may not be predicated on a violation of a traffic law. The record in this case, as the district judge pointed out, shows not only that Trent was guilty of the traffic law violation of driving at a speed in excess of the posted speed limit, but also that he was driving with a blood alcohol content in excess of .10 percent and with knowledge that his vehicle had a tendency to veer to the right upon application of the brakes.

The evidence adduced at the juvenile court hearing supports the findings of fact and recommendation of the referee. The district judge ruled correctly in approving and confirming those findings and the recommendation.

Affirmed.

ZENOFF, C. J., and BATJER and THOMPSON, JJ., concur.

GUNDERSON, J., dissenting:

Gone are the days when courts might lawfully deny minors due process "for their own good."[1] In 1967, the United States Supreme Court held that the due process clause of the Fourteenth Amendment requires adjudicatory hearings for juveniles to respect "the essentials of due process and fair treatment."[2] True, the Supreme Court has since held that due process does not require that factual issues be decided by a jury in juvenile proceedings.[3] Still, "the essentials of due process and fair treatment" indubitably are denied when the trier of facts does not weigh the evidence in the light of applicable law. That is the core of cogent arguments the Public Defender has tendered on appellant's behalf, in thoughtful and well researched briefs.

Instead of meeting the Public Defender's strongest arguments, the majority style the Public Defender's first and weakest legal point as his "principal assignment of error"—which it does not seem to be at all, although orderly presentation of appellant's position was attained by stating it first.[4] However, by labeling it the "principal assignment," and satisfactorily

---

[1]Nonetheless, many still believe justice is served by denying minors due process, whenever possible. See: L. Forer, *No One Will Lissen* (1970).

[2]In re Gault, 387 U.S. 1, 30 (1967).

[3]McKeiver v. Pennsylvania, 403 U.S. 528 (1971).

[4]As stated by the Public Defender, the issues tendered for our consideration are:

"1. Because NRS 62.090(4) contained mandatory language, must a rehearing de novo of a juvenile matter be granted automatically upon application?

"2. If a hearing de novo of a juvenile matter is not automatic upon application, was it nevertheless error to deny a rehearing where the

disposing of it, the majority subtly stigmatize the Public Defender's subsequent points, making summary treatment of them seem acceptable and inevitable. I believe those other points are significant, that the authorities proffered to support them are substantial, and that they must either be met in some more satisfactory manner than the majority has met them, or we must remand for a new adjudicatory hearing.

For example, the Public Defender notes that the referee apparently believed appellant was *per se* guilty of manslaughter solely because appellant had exceeded the posted speed limit. Hence, the Public Defender contends the referee decided appellant's guilt on an incorrect legal standard, rather than considering whether, in view of all facts, appellant had been proved guilty of "criminal negligence," NRS 193.190, beyond a reasonable doubt, In re Winship, 397 U.S. 358 (1970). In substance, the majority's "answer" is that the evidence was sufficient to justify a finding of criminal negligence, if one had been made; but that, obviously, is no answer at all, particularly since the majority allude to evidence the referee expressly stated he would not consider.

Again, the Public Defender argues that the referee was not merely unaware of the ultimate issues (whether appellant was guilty of criminal negligence, and whether such criminal negligence was a proximate cause of the ensuing death), but also refused to consider the deceased's conduct as it related to these issues. The majority's response is that contributory negligence of the deceased is not a defense to a criminal action, which of course is beside the point. The Public Defender's point is that the deceased's conduct bore on whether appellant's fault was so gross as to constitute criminal negligence, and whether certain aspects of appellant's conduct had any causal nexus with the death at all.[5]

As the Public Defender points out, it does not appear that

referee as trier of fact applied erroneous legal standards to the evidence before him?

"3. Must the contributory negligence of the decedent be considered in determining whether an operator of an automobile is guilty of involuntary manslaughter?

"4. May an adjudication of delinquency based upon the commission of involuntary manslaughter be upheld where there has been no finding of criminal negligence?"

[5]The Public Defender's Opening Brief states the issue as follows:

"It has been established beyond question that in this case Lonnie Anthony Reo, the decedent, was negligent. First, he and his companion were wearing long, dark coats (f. 009). Indeed, Lonnie Anthony Reo was wearing a coat of length and color familiar to anyone who has ever served in the United States Army (f. 009). This apparel was worn

either the referee or judge weighed the relevant evidence in the light of applicable law. Purely from an administrative standpoint, I feel as I am sure my brethren do. We have been constrained to remand this case before; it would be fortunate were we not constrained to do so again. However, an adult charged with manslaughter is entitled to a jury properly instructed on the law, and a minor clearly must be afforded equivalent protection. Thus, this matter should be remanded for a rehearing, at which the court would be instructed to determine whether criminal negligence on appellant's part proximately caused the death in question, giving due consideration to the actions of the deceased.

in spite of the fact that it was dangerous to be so attired in close proximity to a highway after dark. See *Smith v. State,* 65 So.2d 303 (Fla. 1953). Second, he was walking *with* the flow of traffic along East Charleston Boulevard in an area without sidewalks. This latter action was a violation of both NRS 484.181(2) now NRS 484.331(2) and Clark County Code Sect. 14.36.060. His actions were both a misdemeanor (Clark County Code Sec. 14.64.080 and NRS 484.735 (now NRS 484.251) as well as negligence per se (*Ryan v. Manhattan Big Four Mining Co.,* 38 Nev. 92, 145 P. 907 (1914).

"This contributory negligence of the decedent, although not a complete defense to a charge of involuntary manslaughter occurring through the operation of an automobile, is entitled to serious consideration in resolving the questions whether a defendant's negligence is the proximate cause of death and indeed whether defendant's conduct can be called negligence at all. *State v. Sisneros, supra; State v. Bowser,* 124 Kan. 556, 261 P. 846 (1927); *Driggs v. State,* 40 Ohio App. 130, 178 N.E. 15 (1931) (Petition in error dismissed 1230 his St. 686, 177 N.E. 633); *State v. Oakley,* 176 N. Car. 755, 97 S.E. 616 (1918); *State v. Phelps,* 242 N. Car. 540, 89 S.E.2d 132 (1955); *People v. Campbell,* 237 Mich. 424, 212 N.W. 97 (1927); *Prezzi v. U.S.,* 62 at 2d 196 (D.C. 1948)."