The defendant is charged with manslaughter on account of a collision on Phifer Street in Asheville between an auto-delivery wagon operated by defendant and a bicycle ridden by deceased. The defendant is a negro boy employed by M. V. Moore Co., of Asheville, and was in the performance of his duties with his employer at the time of the accident. The deceased Percy Morris, was a white boy eleven years old. The collision occurred on 20 June, 1917.
Ashland Avenue runs south from Patton Avenue for a short distance. It is paved north of Phifer, but south of Phifer is not paved "and sort of runsout there" at Phifer. Phifer Street is paved its entire length and there is a good deal of travel with machines on Phifer Street. Both of the streets are paved with bithulithic. From Ashland west on Phifer is a grade of four or five per cent, and from Phifer north on Ashland is a steep grade, and a bicycle picks up a great deal of momentum going down the hill to Phifer. At the northwest corner of Ashland and Phifer is a building, and "one coming down Phifer cannot see a person coming down Ashland, and a person coming down Ashland cannot see another coming down Phifer because of the store." Ashland is 24 feet wide and Phifer is 24 1/2 feet wide.
Just before the accident the defendant was traveling east on Phifer and was about to cross Ashland when the deceased came down Ashland and turned into and across Phifer to the south side of (763) Phifer, where the collision occurred. As soon as the deceased came in sight of defendant, he (defendant) and his companion yelled "Look Out!" or "Get out of the way!" The automobile was coming down Phifer near the center of the street, and the left hind wheel skidded near the center of the street. When the deceased came in sight the defendant immediately turned the machine further to the right, and when the accident occurred, was nearer the right curb — "Not more than eighteen inches" from the curb. When defendant applied his brake the left wheel made a mark for a distance of 87 1/2 feet.
The truck ran over the boy and killed him. The evidence tended to prove that the defendant was driving the motor truck at thirty miles an hour; that after the brakes were applied the truck skidded 50 or 55 feet before it struck the boy, and in all 87 feet before it stopped; and *Page 808 
that no gong or other signal was sounded as the truck approached the intersection with Ashland Avenue.
It was also in evidence that the deceased turned into Phifer Street a short distance in front of the truck, and that if defendant had turned to the left instead of the right he could have avoided the deceased.
The ordinance of Asheville limited the speed of motor trucks, automobiles, etc., to seven miles an hour.
A witness for the State testified that the defendant turned to the right and struck the deceased, and that if he had turned to the left he would have missed him. He then said: "It was a mistake in the judgment of the boy (defendant) in turning to the right instead of to the left." The court ruled out this part of the testimony and defendant excepted.
At the conclusion of the evidence the defendant moved for judgment of nonsuit, which was denied, and he excepted.
The defendant requested his Honor to charge the jury as follows:
"1. The court instructs the jury that if you find that the defendant and the deceased came to or near the intersection of Ashland Avenue and Phifer Street at about the same time, and traveling at about the same rate of speed, and the accident could have been averted by the defendant turning his automobile to the left instead of to the right, and that such failure on the part of the defendant caused the collision and the death of the deceased that such failure was a mistake in judgment on the part of the defendant and is not evidence of any criminal intent on his part. If you find that the collision between the automobile driven by the defendant and the bicycle ridden by deceased was the result of a mistake of judgment on the part of one or both, then the court instructs you that it would be your duty to acquit defendant.
"2. If the jury shall find from the evidence that the cause of the death of the deceased was that the defendant made a mistake of (764) judgment in turning his automobile to the right to avoid a collision, and that the collision and death resulted because of such mistake of judgment on the part of defendant then it would be the duty of the jury to return a verdict of not guilty.
"3. It is the duty of the State to satisfy the jury beyond a reasonable doubt of every element necessary to convict defendant of the charge of manslaughter, and if the jury is not so satisfied beyond a reasonable doubt of the guilt of defendant upon all of the evidence, it will be the duty of the jury to return a verdict of not guilty.
"4. If the jury shall find from all of the evidence that the defendant was operating his automobile at an excessive rate of speed in violation *Page 809 
of the law, and that deceased was operating his bicycle at an unlawful rate of speed in violation of the law, and that the death of deceased was caused by the joint acts of the defendant and the deceased, then it will be the duty of the jury to return a verdict of not guilty, unless the jury is satisfied beyond a reasonable doubt that the death of deceased was directly and solely caused by defendant.
"5. If the jury finds from all the evidence that the death of deceased was caused by the unlawful act of either deceased or the defendant, but the jury is unable to decide whether the unlawful act of the defendant or the unlawful act of the deceased was the cause of the death of the deceased, then it will be the duty of the jury to return a verdict of not guilty.
"6. If the jury shall find from the evidence that the deceased in coming down Ashland Avenue reached a point near the intersection of said avenue and Phifer Street, where he saw the defendant approaching said intersection with his automobile, which said automobile was being operated at a rapid rate of speed, and the deceased, after so seeing said automobile, proceeded on his bicycle to a point in front of said automobile and as a result thereof was injured and killed, it would be the duty of the jury to return a verdict of `not guilty.'
"7. If the jury shall find from the evidence that the deceased rode his bicycle down Ashland Avenue at a rapid rate of speed, without giving any alarm by sounding his horn, or otherwise, to vehicles approaching on Phifer Street, and that when he reached a point at or about the intersection of Ashland Avenue and Phifer Street, he saw the defendant approaching with an automobile and that after seeing the defendant approaching the deceased suddenly precipitated himself in the path of said automobile, and that the death of the deceased was due to the act of the deceased in so suddenly precipitated himself in the path of said automobile, then it will be the duty of the jury to return a verdict of "not guilty."
One of the attorneys for the prosecution, while addressing the (765) jury called attention to the fact that defendant had failed to take the stand as a witness on his own behalf and deny any of the statements made by the witnesses for the State. Counsel for defendant, as soon as they could make themselves heard, objected. The court told said attorney for the State that he had no such right and cautioned the jury not to consider anything that had been said about defendant's failure to take the stand in his own behalf. Said attorney for the State then resumed his argument, saying that he would withdraw all that he had said about defendant's failure to go upon the stand and testify, *Page 810 
and asked the jury not to consider anything that he had said in that connection. The court then told the jury that the failure of the defendant to testify in his own behalf must not be used to his prejudice in any manner whatsoever. The defendant excepted.
The court refused to give the prayers for instruction, except as to reasonable doubt, and the defendant excepted as to each. The defendant also excepted to certain parts of the charge.
There was a verdict of guilty and a judgment of imprisonment for three years and to be worked on the roads, from which defendant appealed.
There are two grounds upon which his Honor could properly deny the motion for judgment of nonsuit.
The first is that, according to the evidence for the State the defendant approached an intersecting street in the city of Asheville without slowing down, or giving any signal and running at thirty miles an hour, which was a violation of the law of the State (Laws 1913, ch. 107) and of the ordinance of the city, and the next that independent of a violation of a statute or ordinance, he was guilty of such negligence as would make him criminally liable.
The principle is generally stated in the textbooks that "if one person causes the death of another by an act which is in violation of law it will be manslaughter, although not shown to be willful or intentional." (McClain Cr. L., vol. 1, sec. 347), or that "When life has been taken in the perpetration of any wrongful or unlawful act, the slayer will be deemed guilty of one of the grades of culpable homicide, notwithstanding the fact that death was unintentional and collateral to the act done" (13 R.C.L. 843); but on closer examination of the authorities it will be seen that the responsibility for a death is sometimes (766) made to depend on whether the unlawful act is malum in se or malum prohibitum, a distinction noted and discussed in S. v.Horton, 139 N.C. 588.
It is, however, practically agreed, without regard to this distinction, that if the act is a violation of a statute intended and designed to prevent injury to the person, and is in itself dangerous and death ensues, that the person violating the statute is guilty of manslaughter at least, and under some circumstances of murder.
The principle is recognized in S. v. Horton, supra, and in S. v.Turnage, 138 N.C. 569; S. v. Limerick, 146 N.C. 650, and S. v. Trollinger, *Page 811 162 N.C. 620, and has been directly applied to deaths caused by running automobiles at an unlawful speed.
In 2 R. C. L. 1212, the author cites several authorities in support of the text that "One who willingly or negligently drives an automobile on a public street at a prohibited rate of speed or in a manner expressly forbidden by statute, and thereby causes the death of another, may be guilty of homicide; and this is true although the person who is recklessly driving the machine uses, as soon as he sees a pedestrian in danger, every effort to avoid injuring him, provided that the operator's prior recklessness was responsible for his inability to control the car and prevent the accident which resulted in the death of the pedestrian."
Again there is evidence of negligence amounting to recklessness, and "where one by his negligence has caused or contributed to the death of another he is guilty of manslaughter." McClain Cr. L., vol. 1, sec. 349.
The negligence must be something more than is required on the trial of an issue in a civil action, but it is sufficient to be submitted to a jury in a criminal prosecution if it is likely to produce death or great bodily harm (S. v. Tankersley, 172 N.C. 955), and in this case the defendant could reasonably anticipate meeting some one at the crossing, and to approach it at a rate of speed twice that allowed by the State statute and four times that allowed by the ordinance without reducing the speed and without signal is evidence of recklessness which justified submitting the question of guilt to the jury.
These principles of the common law and the provision of the statute are intended to protect the life and limb of the citizen using the streets and highways of the State, and those who violate them may be prosecuted for an assault if personal injury, and not death, is the result, and for manslaughter or murder if death ensues.
The exception to the ruling of his Honor withdrawing the opinion of the witness that it was a mistake of judgment of the defendant in turning to the right instead of to the left cannot be sustained. It was a mere inference of the witness and not a statement of a fact, and was immaterial as the defendant could not be excused on account of a mistake of judgment brought about by his own reckless conduct. (767) This also disposes of the first and second prayers for instruction.
The third prayer for instruction was substantially given.
The fourth, fifth, sixth, and seventh prayers for instruction, except as given in the charge, bear on the contributory negligence of the deceased, which while relevant in the trial of a civil action is no defense to a criminal prosecution.
"It is immaterial that there was negligence on the part of the deceased himself contributory to the result, the doctrine of contributory *Page 812 
negligence having no place in the law of crimes." McClain Cr. L., vol. 1, sec. 349; 2 R.C.L. 1212; Schultz v. State, Ann. Cases, 1912, c. 496, and note.
There is also no evidence that the deceased precipitated himself in the path of the automobile, and the evidence is that he could not see one coming down Phifer Street because of a store on the corner. The reference by counsel to the fact that the defendant did not testify in his own behalf was improper, but any error in doing so was cured by the statement made by the judge and by the withdrawal of the remark by counsel.
We have examined the charge and find it free from error.
It is not subject to the objection that his Honor singled out the testimony of a witness and gave undue importance to it, as his Honor did no more than call the name of the witness while reciting the evidence, and it states the contentions of the defendant at length, and is fair and free from bias.
The complaint that very little is said about the law of the case is answered by the fact that outside of an explanation of a death as the result of an unlawful act or negligence the case resolved itself into an issue of fact.
No error.
Cited: S. v. Gash, 177 N.C. 597, 598; S. v. Gray, 180 N.C. 700; S. v.Rountree, 181 N.C. 538; S. v. Sudderth, 184 N.C. 755; S. v. Shepherd,187 N.C. 609; S. v. Whaley, 191 N.C. 390; S. v. Leonard, 195 N.C. 254; S.v. Palmer, 197 N.C. 137; S. v. Eldridge, 197 N.C. 627; S. v. Satterfield,198 N.C. 684, 685; S. v. Durham, 201 N.C. 730; S. v. Agnew, 202 N.C. 757;S. v. Stansell, 203 N.C. 72; S. v. Cope, 204 N.C. 30; S. v. Huggins,214 N.C. 570; S. v. Lowery, 223 N.C. 603; S. v. Triplett, 237 N.C. 607; S.v. Smith, 238 N.C. 87; S. v. Bournais, 240 N.C. 312.
(768)