STATE v. R. H. STANSELL.

(Filed 15 June, 1932.)

1. **Homicide C a—Mere violation of safety statute through want of due care is not culpable negligence when not likely to result in death.**

The breach of a statute enacted for the safety of the public is negligence *per se,* but culpable negligence implies more than a lack of precaution or the exercise of ordinary care, and in a prosecution for manslaughter an observance must be made between the intentional violation

of a safety statute and negligent failure to observe its provisions, a person intentionally violating such statute resulting in death to another being guilty of manslaughter at least, or if he violates such statute with reckless disregard of the consequences or with heedless indifference to the rights of others, when injury to others might have been foreseen as a probable result, such violation would constitute culpable negligence, but where the statute is violated merely from want of due care and the violation under the circumstances is not likely to result in death or bodily harm, such violation would not constitute culpable negligence.

2. **Same—Instruction in this case as to culpable negligence held erroneous.**

Where the driver of an automobile exceeds the speed limit or drives on the wrong side of the road, not intentionally or recklessly, but merely through failure to exercise due care, and thereby proximately causes the death of another, he would not be culpably negligent unless in the light of the attendant circumstances his negligence was likely to result in death or bodily harm, and where in a prosecution for manslaughter there is evidence of violation of statutes regulating such matters, N. C. Code, 2617, 2618, and that the violation proximately caused the death of another, an instruction which is susceptible of the construction that the mere violation of the statutes would be sufficient for conviction if such violation proximately caused death, is erroneous, and a new trial will be awarded on appeal, but if the defendant was driving while intoxicated or recklessly, N. C. Code, 2621(44), (45), (46), such violation in itself would constitute culpable negligence.

APPEAL by defendant from *Stack, J.,* at November-December Term, 1931, of BUNCOMBE.

The defendant was indicted for the murder of Ann Smith, her death resulting from the collision of automobiles on a highway, but he was prosecuted only on a charge of manslaughter. He was convicted of manslaughter and from the judgment pronounced he appealed upon assigned error.

The State's evidence tended to establish the following circumstances. The collision occurred a mile or more from Asheville on the highway between Asheville and Hendersonville. Earle Campbell, Joe McCormick, Miss Plemmons, and Mrs. Smith were in a Plymouth coupe, which had only one seat. McCormick was driving, the deceased at his side, Campbell at her right with the Plemmons girl in his lap. At 10:30 at night they left Asheville going in the direction of Hendersonville—"Just driving around." Their speed was between thirty and thirty-five miles an hour and they were on the right side of the road. They heard the defendant's car, an Oldsmobile, coming from the direction of Hendersonville traveling at the rate of fifty or sixty miles an hour. McCormick turned to the right, the right front wheel of the coupe being off the pavement. The defendant's car struck the coupe at or near the left

door, turned it over, and stopped thirty-five steps away. The door flew open, Campbell and the Plemmons girl fell out, and McCormick and the deceased were thrown out. The deceased lived twenty or thirty minutes after the collision.

The paved part of the road is twenty feet in width with a black line in the middle. A wheel of the defendant's car broke down and there was a "scratched mark on the pavement" on the defendant's left side of the black mark.

For the defendant there was evidence tending to show that the facts were as follows. He was returning from Greenville, S. C., to Asheville with his wife and baby. The lights of the coupe were apparently on his side of the road and his car was on the right side of the line. The cars came together; one of the front wheels of the defendant's car came off, the brakes were knocked loose, and the car made a quick swerve to the left, causing the "scratch" on the road. He was not driving more than thirty-five miles an hour; the coupe was running "quite fast." He pulled as far to the right as he could without going into the ditch, and after the impact was unable to stop his car because the brakes had been broken.

There was evidence that McCormick "acted like a man that was drunk," and that he and Campbell had been convicted of a breach of the liquor law; also that the defendant did. not seem to be normal.

*Attorney-General Brummitt and Assistant Attorney-General Seawell for the State.*

*Charles B. MacRae, Johnston & Horner and Robert R. Reynolds for defendant.*

ADAMS, J. The common-law definition of involuntary manslaughter includes unintentional homicide resulting from the performance of an unlawful act, from the performance of a lawful act done in a culpably negligent manner, and from the negligent failure to perform a legal duty. *S. v. Satterfield,* 198 N. C., 682. The definition is material in its bearing upon the criminal responsibility of a person who kills another in the breach of a statute intended and designed to prevent the infliction of personal injury, as may be seen by reference to some of the more recent decisions.

The case of *S. v. Tankersley,* 172 N. C., 955, presented the question of liability for involuntary manslaughter at common law—unintentional homicide following a negligent omission of duty. In that case it was said that in order to hold one a criminal there must be a higher degree of negligence than is required to establish negligent default on a mere

civil issue, and that in order to a conviction of involuntary manslaughter, attributable to a negligent omission of duty, when engaged in a lawful act, it must be shown that a homicide was not improbable under all the facts existent at the time and which should reasonably have an influence and effect on the conduct of the person charged.

The law of involuntary manslaughter has been applied to cases in which injury or death resulted from the collision of motor vehicles operated in violation of a statute designed to secure personal safety. One of the first is *S. v. McIver,* 175 N. C., 761. It is there held that if the act is a violation of a statute intended and designed to prevent injury to the person and is in itself dangerous, and death ensues, the person violating the statute is guilty of manslaughter, and that while the negligence must be something more than is required in a civil action the question of liability should be submitted to a jury in a criminal prosecution if the negligent act was likely to produce death or great bodily harm.

In *S. v. Gray,* 180 N. C., 697, it is said: "The principle is generally stated in the textbooks that 'if one person causes the death of another by an act which is in violation of law, it will be manslaughter, although not shown to be wilful or intentional' (McClain Cr. L., Vol. 1, sec. 347), or that when life has been taken in the perpetration of any wrongful or unlawful act, the slayer will be deemed guilty of one of the grades of culpable homicide, notwithstanding the fact that death was unintentional and collateral to the act done (13 R. C. L., 843); but on closer examination of the authority, it will be seen that the responsibility for a death is sometimes made to depend on whether the unlawful act is *malum in se* or *malum prohibitum,* a distinction noted and discussed in *S. v. Horton,* 139 N. C., 588. It is, however, practically agreed, without regard to this distinction, that if the act is a violation of a statute intended and designed to prevent injury to the person, and is in itself dangerous, and death ensues, the person violating the statute is guilty of manslaughter at least, and under some circumstances ·of murder. The principle is recognized in *S. v. Horton, supra,* and in *S. v. Turnage,* 138 N. C., 569; *S. v. Limerick,* 146 N. C., 650, and *S. v. Trollinger,* 162 N. C., 620, and has been directly applied to deaths caused by running automobiles at an unlawful speed. In 2 R. C. L., 1212, the author cites several authorities in support of the text that one who wilfully or negligently drives an automobile on a public street at a prohibited rate of speed, or in a manner expressly forbidden by statute, and thereby causes the death of another, may be guilty of homicide; and this is true, although the person who is recklessly driving the machine uses, as soon as he sees a pedestrian in danger, every effort to

avoid injuring him, provided that the operator's prior recklessness was responsible for his inability to control the car and prevent the accident which resulted in the death of the pedestrian."

The case is cited in *S. v. Rountree,* 181 N. C., 535, in which it is remarked that culpable negligence under the criminal law is such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others; also that if one is engaged in an unlawful and dangerous act, which is itself in violation of a statute designed to prevent injury to the person, and death ensues, the actor will be guilty of manslaughter at least. The principle is restated in several subsequent decisions. *S. v. Jessup,* 183 N. C., 771; *S. v. Sudderth,* 184 N. C., 753; *S. v. Crutchfield,* 187 N. C., 607; *S. v. Leonard,* 195 N. C., 242; *S. v. Palmer,* 197 N. C., 135.

The difficulty of attaining perfection in defining "culpable negligence" is apparent, but it is agreed that the words necessarily imply something more than a lack of precaution or the exercise of ordinary care. An instruction to the jury merely in the words of the latter proposition is not sufficient; it should explain wherein the distinction consists. Ordinary negligence is based on the theory that a person charged with negligent conduct should have known the probable consequences of his act; culpable negligence rests on the assumption that he knew the probable consequences but was intentionally, recklessly, or wantonly indifferent to the results. With respect to the breach of a statute enacted in the interest of public safety a basic concept may involve the distinction between the intentional violation of the statute and the negligent failure to observe its provisions. If a person driving a motor vehicle upon a highway intentionally violates the provisions of statutes regulating the operation of motor vehicles upon the public highways of the State and thereby proximately causes personal injury or death he is deemed to be criminally culpable and in the one case is guilty of assault and battery and in the other manslaughter. If he acts in violation of a positive statute and his violation is the direct cause of the injury or death, the intent may be implied, although it is ultimately a matter for the jury to determine under instructions given by the court. Such person would likewise be criminally culpable if he operated a motor vehicle upon a public highway in violation of the statutes and such violation disclosed a reckless disregard of consequences or a heedless indifference to the rights and safety of others and reasonable foresight that injury would probably result. *S. v. Agnew,* 202 N. C., 755. But if he did not violate any of these statutory provisions intentionally or recklessly but failed to observe them merely through a want of ordinary care he would not

be held to culpable negligence unless the prohibited act was in itself dangerous—*i. e.* likely under the circumstances to result in death or bodily harm. *S. v. McIver, supra; S. v. Gray, supra.* The instruction in reference to driving at excessive speed which was approved in *S. v. Gash,* 177 N. C., 595, must be considered in connection with evidence tending to show intent and recklessness.

The statute provides that when one motor vehicle shall meet another on the public highway the driver of each of them shall reasonably turn to the right of the center of the highway so as to pass without interference; that in no event shall the speed exceed forty-five miles an hour; that it shall be unlawful for any person while under the influence of intoxicating liquor to drive any vehicle upon the highways of the State, or for any person to drive a motor vehicle upon the highways recklessly or at a rate of speed greater than is reasonable and proper. N. C. Code, 1931, secs. 2617, 2618, 2621(44), 2621(46). A violation of these provisions is a misdemeanor. Section 2599.

After referring to evidence tending to show the defendant's violation of these sections the court gave the following instruction to which the defendant excepted: "The charge is that he was violating one or more of these provisions of the law of North Carolina that were passed for the benefit and protection of. the traveling public. To violate any of them is made criminal, and therefore it is culpable or criminal negligence for anyone to violate any of those laws of the highway. Now, in this case if you find from the evidence beyond a reasonable doubt that the defendant was violating either or any of these provisions of law that I have called to your attention at the time of the collision and that such violation of law on his part caused the collision and thereby caused the death of Mrs. Smith, then he would be guilty of manslaughter at least."

The collision occurred on a public highway. If the defendant at that time, in violation of law, was operating his car recklessly, as recklessness is defined at common law or by statute, Laws 1927, chap. 148, sec. 3, Code, 1931, sec. 2621(45), or was operating his car while under the influence of intoxicating liquor, and ran into the other car and thereby proximately caused the death of one of the occupants, he was guilty of manslaughter at least. But if he exceeded the speed limit, or drove on the wrong side of the marked line, not intentionally or recklessly, but merely through a failure to exercise due care and thereby proximately caused the death he would not be culpably negligent unless in the light of the attendant circumstances his negligent act was likely to result in death or bodily harm. This, as we read the record, is one of the positions taken by the defendant and there are phases of the evidence which tend to support his theory. The court, it is true, informed the jury that the

act must be "more than an ordinary matter of neglect, more than an ordinary tort"; but without further explanation the charge was open to the construction that a slightly negligent act might be deemed culpable in the discretion of the jury, or that negligence simpliciter met the test of criminal responsibility. We are of opinion that the defendant is entitled to a

New trial.