STATE v. TRACY TRIPLETT.

(Filed 29 April, 1953.)

**1. Automobiles § 28e—**

The State's evidence tending to show that defendant, in an intoxicated condition, was driving 65 or 70 miles an hour in a zone limited to his knowledge to a speed not in excess of 35 miles per hour, and struck a five-year-old child with the left front of his car after the child had crossed his lane of travel and was about one and one-half feet to defendant's left of the center line of the highway, with other corroborating circumstances shown in evidence, *is held* sufficient to be submitted to the jury upon the question of defendant's culpable negligence in a prosecution for involuntary manslaughter. G.S. 15-144.

**2. Criminal Law § 78e (1)—**

An exception to the failure of the court to charge "the law on every substantial feature of the case embraced within the issues and arising on the evidence . . ." *is held* ineffectual as a broadside exception.

APPEAL by defendant from *Clement, J.,* and a jury, at September Term, 1952, of WATAUGA.

Criminal prosecution on bill of indictment charging the defendant with the felonious and willful killing of one Janice Lee Goodnight (G.S. 15-144), tried below on the charge of involuntary manslaughter.

On Saturday afternoon, 31 May, 1952, the defendant was driving his Ford automobile on U. S. Highway No. 421, going east about a mile from the Town of Boone, in a built-up settlement known as Perkinsville, when Janice Lee Goodnight, a little five-year-old girl, ran out in front of the defendant's car and was struck and killed.

The defendant's version of the occurrence is that he was driving along in a careful manner, not exceeding 35 or 40 miles per hour, approaching a house on the right which sits back only about eight feet from the edge of the highway, when suddenly a little dog ran out on the highway followed by the little girl, who was trying to catch the dog. As the defendant put it: "There was a hedge at that house and she came right out in the road. . . . The dog ran across the highway then the little girl right beside it. . . . she ran after the dog and she was right in front of the car when I saw her and I couldn't help striking her."

However, the evidence on which the State relies tends to make for a materially different state of facts. It discloses that the defendant, in an intoxicated condition, was driving 65 or 70 miles per hour in a 35-mile per hour speed zone; that there was no shrubbery near the edge of the highway opposite where the child was hit; that the little girl, after coming on the highway from the defendant's right, had entirely crossed his traffic lane and had reached a point about a foot and a half beyond the left of the center line when she was hit by the left front of defendant's car and knocked the rest of the distance across the pavement out on the left shoulder of the road. The State's evidence further discloses that at the point of collision the highway is straight for some considerable distance in both directions and slightly upgrade in the direction the defendant was traveling; that the weather was clear and the road dry. No cars were parked along the highway near the scene, and none was approaching the defendant at the time of the occurrence. No other pedestrians were on or near the highway at the time. The defendant's car, leaving a line of skid marks behind, came to a stop over on the right shoulder about 100 feet beyond the point of impact.

Frank Bolick, who was driving a car just behind the defendant, said the defendant overtook and passed him about 75 or 80 yards from the scene of the collision. This witness further testified: "I saw him on up at the scene of the accident. . . . I heard the car wheels begin to squeal, . . . and something flew out . . ., and when we got on up there, the little girl was lying there . . . about two feet off the hard surface . . . on the shoulder . . . on the lefthand side going east. . . . I was driving right behind the defendant's car. . . . The skid marks didn't show until after he hit the child and knocked it out of the road. . . . I couldn't tell whether the defendant's car increased or decreased speed from the time it passed me until the time of the accident. It just passed me awful fast. It is my opinion that the defendant was making not less than 65 or 70 miles per hour at the time the little girl was hit. The defendant was about one and one-half feet on the lefthand side of the white line in the highway . . . at the time the child was struck. . . . (Cross-examination) . . . I was following along (about 250 feet) behind him when it occurred. There was no car or anything else between us to obstruct our view. . . . I never saw the child until after it was hit by the car. The first thing I saw of it, the little girl bounced off the left fender just like something flew out of the car. She came from the east side of the car over to the left shoulder. . . . I don't think the defendant's car ever slowed its speed until after the child was hit."

The collision occurred near the front of the home of Mrs. Ervin Parsons. She testified: "There is no shrubbery . . . between the house and the highway. . . . There is a pine tree down from my house on the same

side. It is a small one about 5 or 8 feet high and then there is a large pine some thirty feet tall. These trees obstruct the view of my house as you approach it from the west."

Hoy Greene, who was standing a short distance (150 to 200 yards) from the scene of the collision, "heard the tires squeal" and ran up to where the little girl was lying. He testified that the defendant appeared to be "under the influence of an intoxicating beverage. . . . he talked kinda thick." This witness also testified that while there was "a good deal of shrubbery up in front of Parson's house . . . the accident occurred this side of Parson's."

Patrolman Roger Parker said there were 95 feet of skid marks extending from the rear wheels of defendant's car back toward where the child was hit. This witness further testified: "The skid marks were solid, then broken for a distance, then solid again . . . (indicating that the brakes had been released and then applied again) . . . The left front headlight of the car was knocked out. There was a small dent in the left front fender. . . . he (the defendant) was unsteady in his walk, and his eyes were very milky and bloodshot, and there was a film about his eyes, and he had a strong odor of alcohol about his person. . . . I have an opinion . . . that he was under the influence of alcohol at the time. . . . After we found out that the child was dead, I went to the jail. That was not much more than an hour later, with the Chief of Police here in Boone. . . . he (the defendant) was lying on a bunk asleep. I called to him twice and he didn't wake up. I opened the door and went in and shook him, and he got up and sat on the side of the bed. . . . He seemed in a daze and had a strong odor of alcohol. . . ."

Patrolman George Baker, who took the defendant to jail, testified: "He appeared to me that he was drinking heavily."

The defendant on cross-examination said he "never saw the child until she was in the road." He also said he knew he "was in a thirty-five mile speed zone."

The jury returned a verdict of guilty as charged, and from judgment pronounced, imposing a prison sentence of two years, the defendant appealed, assigning errors.

*Attorney-General McMullan, Assistant Attorney-General Bruton, and Gerald F. White, Member of Staff, for the State.*

*Bowie & Bowie and Wade E. Brown for defendant, appellant.*

JOHNSON, J. Was the evidence sufficient to carry the case to the jury over the defendant's motion for judgment as of nonsuit? We think so.

Evidence tending to show these crucial factors make for the State's *prima facie* case: The paved portion of the highway was 20 feet wide;

the little girl came on the highway from the defendant's right; she had crossed the defendant's traffic lane and was about one and one-half feet beyond the center line when hit; the defendant, in an intoxicated condition, was driving 65 or 70 miles per hour in a known 35-mile per hour speed zone; no cars were parked along the highway near the scene; there was no shrubbery near the edge of the highway opposite where the child was hit; and the defendant said he "didn't see the child until she was in the road."

This, with other corroborating circumstances shown in evidence, was sufficient to sustain the inference of culpable negligence of the defendant as the proximate cause of the little girl's death. The court below properly overruled the demurrer to the evidence. *S. v. Swinney,* 231 N.C. 506, 57 S.E. 2d 647; *S. v. Dills,* 204 N.C. 33, 167 S.E. 459; *S. v. Cope,* 204 N.C. 28, 167 S.E. 456; *S. v. Stansell,* 203 N.C. 69, 164 S.E. 580; *S. v. Palmer,* 197 N.C. 135, 147 S.E. 817; *S. v. Trott,* 190 N.C. 674, 130 S.E. 627; *S. v. Rountree,* 181 N.C. 535, 106 S.E. 669; *S. v. McIver,* 175 N.C. 761, 94 S.E. 682. See also *Butler v. Allen,* 233 N.C. 484, 64 S.E. 2d 561.

The single remaining exception brought forward by the defendant challenges the sufficiency of the court's compliance with G.S. 1-180 in charging the jury. Here the defendant excepts for that the court "did not charge the jury as to the law on every substantial feature of the case embraced within the issues and arising on the evidence, . . ." This exception is untenable as a broadside exception. *S. v. Brooks,* 228 N.C. 68, 44 S.E. 2d 482; *S. v. Lambe,* 232 N.C. 570, 61 S.E. 2d 608. See also *Price v. Monroe,* 234 N.C. 666, 68 S.E. 2d 283.

In the trial below we find

No error.