STATE v. FRANCIS DUVAL SMITH.

(Filed 12 June, 1953.)

**1. Automobiles § 28e—**

 The evidence tended to show that defendant was driving at a speed of some 75 to 85 miles per hour in a 35 mile per hour speed zone, and hit a boy riding a bicycle traveling in the opposite direction on defendant's right side of the street, resulting in fatal injury to the boy. *Held:* The evidence was sufficient to be submitted to the jury on the question of defendant's culpable negligence constituting the proximate cause of the boy's death.

**2. Same—**

 Where the State's evidence tends to show that defendant was traveling at a speed of some 75 to 85 miles per hour in a 35 mile per hour speed zone

and struck a boy riding a bicycle traveling in the opposite direction on defendant's right side of the street, nonsuit may not be granted on the contention that the boy was riding the bicycle on his left side of the street in violation of G.S. 20-38 (ff), since contributory negligence as such has no place in the law of crimes.

**3. Same—**

Where the evidence tends to show that defendant driver could have seen the boy riding the bicycle for some 360 feet before his car collided with the bicycle, and that skid marks made by defendant's car did not commence until he was within 41 feet of the point of impact, the court is warranted in submitting to the jury the question of defendant's culpable negligence in failing to keep a proper lookout.

**4. Criminal Law § 53f—**

Where defendant offers no evidence but merely cross-examines each of the numerous witnesses for the State, the fact that the court necessarily consumes more time in stating the contentions of the State than it does those of defendant is not ground for exception.

**5. Criminal Law § 62a—**

Where the sentence imposed is within the discretionary limits fixed by statute, it cannot constitute a cruel or unusual punishment in the constitutional sense, and will not be disturbed in the absence of a showing of abuse of discretion. Constitution of N. C., Art. I, sec. 14.

**6. Criminal Law § 62d—**

A judgment which provides that the sentence imposed should commence at the expiration of sentences imposed in an unrelated former case, and further provides that in the event the former case, then on appeal, should result in a reversal or new trial, the sentence imposed should begin as provided by law, will not be held void as contingent.

**7. Criminal Law § 79—**

Exceptions not brought forward in the brief are deemed abandoned. Rule of Practice in the Supreme Court 28.

APPEAL by defendant from *Armstrong, J.,* and a jury, at 6 October Criminal Term, 1952, of GUILFORD (Greensboro Division).

Criminal prosecution tried upon two bills of indictment, consolidated for trial by consent, charging the defendant with (1) the felonious and willful killing of one George Rainey, tried below on the charge of involuntary manslaughter, and (2) "hit and run" driving in violation of G.S. 20-166.

On the afternoon of 16 July, 1952, at about 12:45 o'clock, George Rainey, a 13-year-old boy, was riding a bicycle along Boren Street in the Pomona suburb, just outside the corporate limits of Greensboro, when he was struck by a Ford automobile and killed instantly. It is alleged that the automobile was being driven by the defendant. Boren Street runs in an east-west direction and is paved to a width of about 18 feet

with black asphalt. The two vehicles were meeting. The automobile was being driven eastwardly along the south side of the street. The boy was riding the bicycle westwardly along the south side, "but . . . was turning to his left off the street."

The collision occurred just after the automobile had passed inside a 35-mile per hour speed zone, marked by a sign on the south side of the street. The point of impact was 220 feet east of the sign. On the north, diagonally across Boren Street from the speed zone sign, is a service station known as Rainey's Service Station. About 50 feet east of the service station, Boren Street is intersected by a dirt street known as Rucker Street. Beyond Rucker Street and on the right looking east is a row of houses facing the south side of Boren Street. The collision occurred in front of the fourth house. On the north, across the street from the houses, is an open grove. Boren Street extends on beyond the point of impact some four blocks east and dead-ends at the Western Electric plant.

The Rainey Service Station "is right at a little rise or crest in the road," over which the automobile had crossed and beyond which it·had traveled some 175 or 200 feet when the boy was struck. The high point of the hillcrest "is just a . . . bit west . . . of the service station." As bearing on the question whether it was a blind hillcrest over which the automobile had just passed before striking the boy, engineer Luke A. Parsley, testifying from notes based on a survey of the premises, said in part: "I verified the elevation and profile of the road and I know where the road goes up and where it goes down. I graphed out a straight line on the profile which was 2½ feet above the surface of the pavement at a point 220 feet east of the speed sign (the point of collision) and saw where that line by clearing the crest of the hill would then be 4 feet 3 inches above the surface of the pavement to the west of the crest there at Rainey's Service Station. . . . If I took a measurement 10 feet to the east of that point—in other words, 230 from the east of the speed sign, (10 feet east of the point of impact) and drew a line 2½ feet high, clearing the crest there in front of Rainey's Service Station, the line would go a distance of approximately 360 feet before it was 4 feet 3 inches off the ground."

The driver of the automobile fled the scene without stopping. It is admitted in the defendant's brief "that there was sufficient circumstantial evidence from which the jury might draw the inference that the defendant was the operator of the Ford automobile at the time of the accident." Hence we omit reference to the evidence bearing on the question of identity of the driver.

There were a number of eyewitnesses to the collision. G. T. Rainey, uncle of the boy, testified he was sitting on the icebox in front of the

Rainey Service Station, with his back to the west, looking east, and saw the boy when he was struck. He estimated the speed of the car at 85 miles per hour. He said he first saw the car when it was east of the station and about 50 or 60 feet from him, and that it traveled on and hit the boy at a point about 300 feet diagonally east of the station from where he was sitting; that the boy was on the same side of the street as the car, but was turning toward the sidewalk when hit by the car—". . . he was turning in east off the street."

Betty Mullinax, a 15-year-old girl, said she saw the collision from a window in her home, which faces Boren Street and is the next house east of the Young house, in front of which the boy was hit. Her attention was attracted by the "squealing of the car brakes." The car and the bicycle were together at the time she first saw them. She said: "At the time I looked up they were together and the boy went off the bicycle into the air." She estimated the speed of the car at "between 75 and 85 miles per hour."

Mrs. Villard Dunn, who lives in the house two doors west of the Young house, said she "heard the brakes first and then the crash. . . . I saw George Rainey. He was hurtling through the air. . . . Then I went out to the street and saw some skid marks there. . . . These skid marks were a portion of the marks I saw the car making. . . . they extended a short distance from this side of my house on the west side beyond the Young house on the east side."

Mrs. S. R. Young, in front of whose house the boy was struck, was sitting near the front door. She said: ". . . on hearing the noise, I ran to the front door where I saw a car directly in front of my house. . . . I don't know what the speed of the car was, but it was going at a terrific rate of speed. . . . I turned to see what it had hit, and I saw a little boy lying in my driveway . . ."

W. S. McKinney, State Highway Patrolman, arrived at the scene a few minutes after the collision. He described the speed sign located on the south side of the street as being the conventional type used in designating a 35-mile-per-hour speed zone, and stated that the sign was visible for a quarter of a mile west of its location. In describing the skid marks, he stated that they began 179 feet east of the sign; that there were straight skid marks covering a distance of 191 feet, and then curved skid marks for an additional distance of 42 feet; that these marks were continuous, growing darker as they got in "this area" to the point they started to curve; that there were some bits and pieces of headlight glass in an area beginning about 41 feet to the east of where the straight skid marks started, and a gouged out place in the surface of the street indicating the approximate point of impact.

There was other evidence indicating that the bicycle was dragged along the surface of the street about 98 feet and thrown some 10 feet to the south, off the pavement. The right head lamp of the automobile identified as the death car was damaged; the right front fender was bent, and what appeared to be blood was found on the front bumper.

F. B. Wilson testified he was sitting in his car on Boren Street in front of the Baptist Church, about two blocks east of the scene of the collision; that he heard the car skidding and heard the crash; that he "looked back and could see the car swerving to the left and then back to the right"; that the car traveled on eastwardly and passed him, traveling at that time about 40 miles per hour, "and seemed to be accelerating."

R. W. Barrow said he was sitting in his car, parked about two blocks east of the scene of the collision. As he put it, "I saw the car approaching the boy as it came over the crest of the hill. . . . the boy on the bicycle was on the south side of the street. He was going off the road. . . . At the time the car struck the boy on the bicycle, the front wheels of the bicycle were off the highway and the back wheel was on the edge of the tar and gravel. I heard the squealing of the tires about that time. I was not able to judge the speed of the car as it approached me. It was some two blocks away. I noticed skidding—he slid straight a little ways and then it began to swerve after he had hit the child."

There was evidence tending to show that the weather was clear, the street was dry, and no other traffic was in the vicinity at the time.

The defendant offered no evidence.

The jury returned a verdict of guilty as charged in each case, and judgments were entered in substance as follows: (1) In the case in which the defendant was found guilty of "hit and run" driving in violation of G.S. 20-166, he was sentenced to the State's Prison for a term of not less than four nor more than five years, with direction that the sentence should commence after the expiration of sentences imposed in a former case against the defendant, tried at the February Term, 1952, of Guilford Superior Court and then on appeal to the Supreme Court of North Carolina (S. v. Smith, 237 N.C. 1, 74 S.E. 2d 291). (2) In the case in which the defendant was found guilty of involuntary manslaughter, he was sentenced to the State's Prison for a term of not less than twelve nor more than twenty years, with direction that this sentence should commence after the expiration of the sentences in the former case tried at the February Term, 1952, then on appeal to the Supreme Court, and also after expiration of the sentence imposed in the companion hit and run driving case.

The court expressly directed that in the event the former case then on appeal to the Supreme Court should result in a reversal or new trial, the sentences imposed in the instant cases should "begin as provided by

law," but it was specifically stipulated that in any event the sentences should run consecutively and not concurrently.

The defendant appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*Hines & Boren and Jordan & Wright for defendant, appellant.*

JOHNSON, J.   The defendant, pointing to the fact that the collision occurred on his right side of the street, contends that the court erred in refusing to allow his motion for judgment as of nonsuit.   Here the defendant emphasizes the provisions of G.S. 20-38 (ff), under which a bicycle is deemed a vehicle and a rider of a bicycle is made subject to the applicable provisions of the statutes relating to motor vehicles.   (*Tarrant v. Pepsi-Cola Bottling Co.,* 221 N.C. 390, 20 S.E. 2d 565.)

The defendant's contention is untenable.   It is well established that "contributory negligence as such has no place in the law of crimes."   *S. v. Cope,* 204 N.C. 28, 167 S.E. 456, and cases there cited.   The evidence adduced below was sufficient to sustain the inference of culpable negligence of the defendant as the proximate cause of the boy's death.   The court below properly overruled the motion for judgment as of nonsuit. *S. v. Swinney,* 231 N.C. 506, 57 S.E. 2d 647; *S. v. Dills,* 204 N.C. 33, 167 S.E. 459; *S. v. Cope, supra; S. v. Stansell,* 203 N.C. 69, 164 S.E. 580; *S. v. Palmer,* 197 N.C. 135, 147 S.E. 817; *S. v. Trott,* 190 N.C. 674, 130 S.E. 627; *S. v. Rountree,* 181 N.C. 535, 106 S.E. 669; *S. v. McIver,* 175 N.C. 761, 94 S.E. 682.   See also *S. v. Triplett,* 237 N.C. 604, 75 S.E. 2d 517.

Next, the defendant insists that the court erred in submitting to the jury with the issues of excessive speed and reckless driving, the issue of culpable negligence based on failure of the defendant to keep a proper lookout.   Here the defendant contends there was not sufficient evidence to justify a finding of culpable negligence based on this theory.   A study of the record, however, impels the other view.   The evidence discloses that in approaching and cresting the hill, the defendant had a sight distance of approximately 360 feet, yet it appears that the skid marks did not commence until he was within about 41 feet of the point of impact.   Also, crucial as bearing on this phase of the case is the evidence that the front wheel of the bicycle was off the main traveled portion of the road when hit.   The exception may not be sustained.   *S. v. Hough,* 227 N.C. 596, 42 S.E. 2d 659; *S. v. Rountree, supra; S. v. Gash,* 177 N.C. 595, 99 S.E. 337.   Judge Armstrong clearly and correctly delineated the difference between actionable negligence and culpable negligence.   *S. v. Rountree, supra.*

The defendant also excepts to the entire charge upon the theory that the court violated the provisions of G.S. 1-180 by failing to give equal stress to the contentions of the State and the defendant. In the development of the State's case, 21 witnesses were called and examined. The narrative reduction of this evidence covers approximately 76 pages of the record. While the defendant cross-examined each of the witnesses, he neither offered evidence nor took the stand in his own behalf. A study of the record leaves the impression that this exception is unfounded. *S. v. Roman,* 235 N.C. 627, 70 S.E. 2d 857.

Further, the defendant insists that the judgment imposed in the manslaughter case was excessive and violated his constitutional rights, entitling him to a remand for proper sentence. The contention is untenable. The punishment imposed was within the discretionary limits fixed by statute. G.S. 14-18; *S. v. Richardson,* 221 N.C. 209, 19 S.E. 2d 863; *S. v. Dunn,* 208 N.C. 333, 180 S.E. 708. While the punishment inflicted is substantial, abuse of discretion has not been shown, nor has it been made to appear that the judgment pronounced comes within the constitutional inhibition against "cruel or unusual punishments." Constitution of N. C., Art. I, Sec. 14; *S. v. Swindell,* 189 N.C. 151, 126 S.E. 417; *S. v. Brackett,* 218 N.C. 369, 11 S.E. 2d 146; *S. v. Daniels,* 197 N.C. 285, 148 S.E. 244, and cases cited.

Finally, the defendant contends that the judgment in the manslaughter case is void as being contingent upon the outcome of a previous unrelated case (*S. v. Smith,* 237 N.C. 1). As to this, it is enough to say that authoritative decisions of this Court support the judgment as pronounced. *S. v. Sellers,* 234 N.C. 648, 68 S.E. 2d 308; *S. v. Satterwhite,* 182 N.C. 892, 109 S.E. 862; *S. v. Cathey,* 170 N.C. 794, 87 S.E. 532.

The defendant concedes in brief that the sentence imposed in the "hit and run" driving case, standing alone, is within the limits permitted by G.S. 20-182. It also appears that none of the assignments of error relating to this case was brought forward in the brief, except in so far as the punishment imposed in that case bears upon the reasonableness of the punishment imposed in the involuntary manslaughter case. Therefore the assignments of error in the "hit and run" driving case will be treated as abandoned. Rule 28, Rules of Practice in the Supreme Court, 221 N.C. 544, p. 563; *Dillingham v. Kligerman,* 235 N.C. 298, 69 S.E. 2d 500.

In the trial below we find no error of law; therefore the judgments will be upheld.

No error.