STATE v. NICK BOURNAIS.

(Filed 19 May, 1954.)

**1. Automobiles § 28e—**

Evidence *held* sufficient to support verdict of guilty of manslaughter based upon culpable negligence in operation of automobile.

**2. Automobiles § 28f: Homicide § 27e—**

In a prosecution for involuntary manslaughter, an instruction to the effect that defendant would be guilty if he killed a human being without intent in doing a lawful act "in an unlawful manner," rather than "in a culpably negligent manner," *held* not to constitute prejudicial error when in other portions of the charge the court painstakingly distinguishes between civil and criminal negligence, and instructs the jury that the unintentional violation of safety statutes not involving actual danger to life, limb, or property would not constitute culpable negligence unless such violation was reckless or in wanton disregard of the safety and rights of others.

**3. Criminal Law § 81c (2)—**

An exception to an excerpt from the charge will not be sustained when the charge is free from prejudicial error when construed contextually.

APPEAL by defendant from *Armstrong, J.,* October Criminal Term, 1953, of GUILFORD (Greensboro Division).

This is a criminal prosecution tried upon a bill of indictment charging the defendant with manslaughter. The charge arose out of the defendant's alleged operation of an automobile in a culpably negligent manner, resulting in the death of one Henry M. Smith.

The evidence of the State tends to show the following facts: The accident occurred about noon on 17 March, 1953, on Highway No. 421, near Moriah Methodist Church, south of Greensboro, as a result of a collision between an automobile driven by the defendant and one driven by Henry M. Smith. Smith died two days later of injuries received in the collision, and William Earl Stowers, a passenger in the defendant's car, was instantly killed.

Smith was traveling south in his Plymouth car on his right-hand side of the highway at a speed of approximately 35 miles per hour, when his car was struck by the defendant's automobile which was traveling north at a speed of approximately 60 or 70 miles an hour. Immediately before the collision, the two right wheels of defendant's car had been off the pavement for a distance of approximately 238 feet, and when it cut back on the pavement it skidded sideways across the highway a distance of about 50 feet and hit the Smith car. One witness testified the defendant's car "just seemed to leap across the road and hit the Smith car." Another testified that defendant's Pontiac hit Mr. Smith's Plymouth, "turned it

right up on the back end and around to the right . . . and the Pontiac just jumped. It was off the ground after it hit Mr. Smith's car for, it looked like, 20 feet, or close to it." The defendant's Pontiac car came to rest some 15 or 20 feet from the road in a ravine about six feet deep, on the defendant's left-hand side of the highway.

According to the testimony of a highway patrolman, who reached the scene a few minutes after the accident, the right wheels of defendant's car began to skid on the dirt shoulder of the highway 106 yards south of the point where it came to rest; that the car cut back on the paved road a distance of approximately 80 feet south of the point where it came to rest; that after the car cut back on the pavement there were four skid marks across the road; that the skid marks on the road and the dirt shoulder of the road were traceable from the defendant's car for a distance of 318 feet; that at the point where the defendant's car cut back on the paved road, the shoulder and the pavement were approximately level.

The defendant testified that he was driving his car about 50 miles an hour and had a flat tire; that he was 50 or 60 feet from the Smith car when he applied his brakes; that he lost control of the car when he stepped on the brakes and the right side of his car struck the Smith car; that he was going sideways when he hit the Smith car.

From a verdict of guilty and the sentence imposed pursuant thereto, the defendant appeals, assigning error.

*Attorney-General McMullan and Assistant Attorney-General Bruton for the State.*

*Rose & Sanford and Stacy Weaver, Jr., for defendant, appellant.*

DENNY, J. The defendant does not challenge the sufficiency of the evidence to carry the case to the jury. In fact, there is ample evidence to support the verdict. *S. v. Huggins,* 214 N.C. 568, 199 S.E. 926; *S. v. Landin,* 209 N.C. 20, 182 S.E. 689; *S. v. Palmer,* 197 N.C. 135, 147 S.E. 817; *S. v. Gray,* 180 N.C. 697, 104 S.E. 647; *S. v. McIver,* 175 N.C. 761, 94 S.E. 682. However, he does except to and assign as error numerous portions of his Honor's charge to the jury, among them being the following: "In connection with this charge of involuntary manslaughter, . . . the Court instructs you that there are two types of manslaughter in North Carolina: voluntary and involuntary. Now, you are concerned in this case only with involuntary manslaughter; and the Court charges you that the crime of involuntary manslaughter for which this defendant is being tried as defined at the common law is the killing of a human being by another human being in doing some unlawful act not amounting to a felony nor likely to endanger human life and without intent to kill, *or where one kills another without intent to kill in doing a lawful act in an unlawful manner.*" (Italics ours.)

The gravamen of the defendant's challenge to the correctness of the above instruction is limited to the portion thereof we have italicized.

The elements embraced in involuntary manslaughter as defined at common law are set out in *S. v. Satterfield,* 198 N.C. 682, 153 S.E. 155, in the following language. "This offense consists in the unintentional killing of one person by another without malice (1) by doing some unlawful act not amounting to a felony or naturally dangerous to human life; or (2) by negligently doing some act which in itself is lawful; or (3) by negligently failing or omitting to perform a duty imposed by law." The Court said this definition "includes unintentional homicide . . . from the performance of a lawful act done in a culpably negligent way, and from the negligent omission to perform a legal duty."

In the above case, the State relied upon the alleged breach of the statute which requires a motorist traveling on a servient highway to stop before entering a dominant highway. Public Laws of 1927, Chapter 148, section 21, now codified as G.S. 20-158. The statute, however, contains a provision to the effect that no failure so to stop before entering the dominant highway "shall be considered contributory negligence *per se* in any action at law for injury to person or property . . ." The Court conceded there was ample evidence of Satterfield's disregard of the statute and that his failure to obey the law was the negligent omission of a legal duty, citing *Ledbetter v. English,* 166 N.C. 125, 81 S.E. 1066, but held that mere proof of the failure of the defendant to obey this statute was insufficient to warrant his conviction; that to hold a person criminally responsible for a homicide his act must have been a proximate cause of the death. Whereupon the Court held the motion to dismiss should have been granted.

We concede that in the present case it would have been appropriate and required less explaining as to what was meant by "doing a lawful act in an unlawful manner," if the court in lieu of using the words "in an unlawful manner," had used the words "in a culpably negligent manner." *S. v. Satterfield, supra; S. v. Stansell,* 203 N.C. 69, 164 S.E. 580. See also *S. v. Cope,* 204 N.C. 28, 167 S.E. 456, where the late *Chief Justice Stacy* collected and classified the decisions applicable to negligence generally, including criminal or culpable negligence. But, in other parts of the charge, his Honor pointed out clearly the distinction between those statutes, the unintentional violation of which would not constitute culpable negligence, and those the violation of which would constitute such negligence. He likewise pointed out the difference between the unintentional violation of the common law rules of the road and the willful and wanton violation of such rules. For example, in this connection, his Honor charged the jury as follows: ". . . we have in North Carolina a number of rules and regulations which govern the operation of motor

vehicles on our public highways. Some of them are statutory laws enacted by the Legislature of this State for the protection of the life and limb of those who travel and use our highways commonly known and referred to as the motor vehicle laws. Then we have other rules which are known as common law rules . . . which today govern the operation of motor vehicles on our public highways. The Court charges you that the violation of these rules and regulations, whether done intentionally or otherwise, is in most instances negligence, that is, constitutes actionable negligence, and renders one civilly liable for damages if the violation proximately results in some injury or damage or death to another. On the other hand, members of the jury, I want you to clearly understand that the violation of these rules and regulations, whether statutory or common law—with the exception of the reckless driving statute, this is General Statutes of North Carolina, Section 20-140, and will be read and explained to you—which do not involve actual danger to life, limb or property, would not perforce, that is by force, of itself constitute criminal or culpable negligence such as this defendant is charged with. On the other hand, . . . I want you to clearly understand this: An intentional, willful or wanton violation of a statutory or common law rule or regulation designed for the protection of human life or limb or both, which proximately results in injury or death, is culpable negligence . . . On the other hand, members of the jury, the Court wants you to clearly understand this: An unintentional violation, that is, where a person does not intend to violate a statutory or common law rule of the road unaccompanied by recklessness or probable consequences of a dangerous nature, when tested by the rule of reasonable prevision—that means foresight—is not such as imports criminal or culpable negligence." The distinction between negligence that would and negligence that would not be culpable was emphasized throughout the charge and in our opinion, when it is considered contextually, as it must be, it contains no prejudicial error. *S. v. Davis,* 225 N.C. 117, 33 S.E. 2d 623; *S. v. Hunt,* 223 N.C. 173, 25 S.E. 2d 598; *S. v. Smith,* 221 N.C. 400, 20 S.E. 2d 360; *S. v. Elmore,* 212 N.C. 531, 193 S.E. 713.

The above assignment of error forms the basis of the defendant's remaining exceptions and assignments of error. Therefore, in view of the conclusion we have reached, none of them should be sustained.

The charge of the court, when considered in its entirety, stated the applicable rules of law substantially in accord with the decisions of this Court. *S. v. Smith,* 238 N.C. 82, 76 S.E. 2d 363; *S. v. Swinney,* 231 N.C. 506, 57 S.E. 2d 647; *S. v. Hough,* 227 N.C. 596, 42 S.E. 2d 659; *S. v. Cope, supra; S. v. Gash,* 177 N.C. 595, 99 S.E. 337.

In the trial we find

No error.